# Richmond

## Paul Harper v. Commonwealth.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*Hester & Hester,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On the afternoon of October 13, 1934, Paul Harper shot and killed Richard Campbell. He was indicted for murder and in due course tried. A jury found him guilty of voluntary manslaughter and fixed his punishment at five years in the penitentiary. This verdict the court confirmed. We are asked to set it aside as contrary to and as unsupported by evidence. Under familiar rules we look primarily to that tendered on behalf of the Commonwealth.

Harper and Campbell were friends and neighbors, who lived on Otey street in the city of Lynchburg. Mrs. Harper came to the Campbell home at about four-thirty in the afternoon, crying and apparently frightened. She said that her children told her that their father had a pistol and was threatening to kill her. She asked for Campbell and was informed that he was not there, but at her request Campbell's daughter went for him to some

nearby place where he then was. She told her father that Harper was coming to their house, armed and to raise a disturbance. Campbell with his friend, Thomas Ferguson, both drunk, then started home. On their way he picked up a broom stick, put it under his coat and observed that he or Harper one was going to the hospital. Harper arrived in a short time thereafter. Mrs. Campbell said that he was not drunk but that he appeared to have been drinking. A policeman who visited him in the hospital soon after the fight saw no evidence of this. Within a short time after Campbell reached home, Harper came and asked if his wife was there, to which Campbell replied, "Yes, Paul, come in." Mrs. Campbell said, "Mr. Harper was nice and did not appear to be mad." He again asked where his wife was. Mrs. Campbell answered that she believed she had gone out the back door. As a matter of fact she had gone into the bathroom, probably to hide. He called. She answered and he started in the direction from which the voice came. Campbell said something about "having no disturbance," and Harper answered "that the house was free." Campbell then struck Harper on the back of his head and from behind, knocked him down and hit him again. Ferguson stamped him and broke one of his ribs. Mrs. Campbell called out, "Daddy, don't hit him any more." At that time Mrs. Harper ran out and pulled Ferguson off of her husband. She, too, begged them not to strike him again. Harper got up, shook hands with Campbell, said he did not have anything against him, and offered to kiss him. Whereupon he and his wife started for the door. As he stepped off of the porch, Campbell again hit him over the head with a stick, knocked him down, and he crawled out in the street. In the language of Mr. Ford, a neighbor, this then followed:

"He got out a revolver and shot as he was getting up. By that time Campbell had run back into the house and Paul fired three more times at his open door. When Harper was shooting in the house Campbell was inside the

house and every time he would show his head around the corner Harper would fire and Campbell would duck back. He was staggering like a man knocked senseless, and after firing four times he went in his pocket and got more cartridges to load again, and Campbell came out of the house again with a stick and advanced rapidly towards Harper as though he was trying to get to him before he could load again, and backed Harper across Otey street to his mail box."

Harper did succeed in reloading his pistol and held it upon Campbell as he backed across the street. Campbell followed and again knocked him down, and it was then that he fired the fatal shot. Harper was taken or went to a hospital. A policeman who visited him there said that he was badly beaten up.

Assuming as we must assume that Harper had made threats against his wife, although he denies it, there was nothing hostile in his demeanor when he came to the Campbell home, into which he was cordially invited. The record shows that he was a peaceful man of good reputation. While Campbell, in the language of his wife, "was a good man until he got drunk." She also tells us that Harper had no reason to believe that he was going to be assaulted until he was actually struck.

The court told the jury that self-defense could not avail unless the party pleading it was without fault in bringing on the difficulty. We had occasion to consider this subject in the case of *Smith* v. *Commonwealth,* decided November 14, 1935, ante, page 776, 182 S. E. 124. That general rule is subject to this exception. One may provoke a conflict and afterwards in good faith announce his desire for peace, and undertake to withdraw; if he be pursued the right of self-defense may then be relied upon. See also, *Dodson* v. *Commonwealth,* 159 Va. 976, 167 S. E. 260; *Vaiden* v. *Commonwealth,* 12 Gratt. (53 Va.) 717; Wharton's Criminal Law, volume 1, section 614 (11th Ed.).

Assuming but not conceding that Harper went to the Campbell home on trouble bent, it is plain that after

the first assault he voiced his peaceful purpose, shook hands with Campbell and started with his wife from the house, when Campbell again knocked him down. All that thereafter followed was part and parcel of one encounter and cannot be split up so as to make him in its progress at one time an assailant. He was staggering and dazed from the beating he had taken.

██ Instructions also deal with the subject of mutual combat. There was no such combat here. To be mutual it must have been voluntarily and mutually entered into. If this were not so, every fight would be a mutual combat, without regard to the manner in which it began. Mutual combat would be its synonym and have no special meaning. One who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as a mutual combat.

Because of these errors in the instructions and because the testimony discloses that the killing was done in self-defense, we are of opinion that this case should be reversed, and it is so ordered. The prosecution should be dismissed unless some new evidence is uncovered.

*Reversed.*