COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Retired Judge Coulter[*]
Argued at Salem, Virginia


ROBERT SCOTT LYNN
                                                OPINION BY
v.        Record No. 0109-97-3      JUDGE SAM W. COLEMAN III
                                             MAY 12, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                    George E. Honts, III, Judge

        Roger Groot (J. Lloyd Snook; Snook & Haughey,
        P.C., on briefs), for appellant.

        Leah A. Darron, Assistant Attorney General
        (Richard Cullen, Attorney General, on brief),
        for appellee.



        Robert Scott Lynn was convicted by a jury for second degree

murder and use of a firearm in the commission of murder.  On

appeal, he contends:  (1) the trial court erred in refusing to

grant certain proffered jury instructions, and (2) the evidence

is insufficient to support the convictions.  We disagree and

affirm the convictions.

                        I.  BACKGROUND

        Appellant and his wife attended a holiday party hosted by

appellant's brother-in-law, Stuart Fitzgerald.  James Nash, the

victim, also attended the party.  Most of the guests, including

appellant and Nash, consumed a substantial amount of alcohol.  At

one point during the evening, Nash displayed two firearms that he

        [*]Retired Judge Jack B. Coulter took part in the
consideration of this opinion by designation pursuant to Code
§ 17-116.01.

had carried with him, a .44 Magnum pistol and a 9 millimeter semi-automatic pistol with a laser sight that produced a red dot on the directed target.

At about 2:00 a.m., Fitzgerald's wife told the guests the party was ending and asked Nash to leave. She asked Buddy Ayers, Nash's co-worker, to assist in getting Nash to leave the party. When Ayers touched Nash's shoulder to get his attention, Nash lifted Ayers "cradle-style" and fell backward with Ayers off the porch into a woodpile. Ayers stood up and was reaching to help Nash from the woodpile when appellant charged by Ayers and began punching Nash. Buddy Ayers testified that he was unable to recall the ensuing events because someone "whacked" him across the face with a large stick.

Kay Ayers testified that appellant and Fitzgerald ran over and started throwing punches at Nash and Ayers as the latter two men helped each other from the woodpile. She went into the house to call the police. When she looked outside, Fitzgerald was astraddle Ayers punching him while appellant was fighting with someone else. She saw Nash go to his truck and return holding a gun at his side. As she turned to tell Fitzgerald's wife to call the police, she heard two gunshots, a pause, and then several more gunshots in rapid succession. She testified that after the firing ended, she looked out and saw Nash lying face down on the lawn.

Rockbridge County Police Sergeant Steve Webb testified that

when he arrived at the scene he found Nash lying on the front lawn next to several parked cars. Appellant admitted to Webb that he had shot Nash, stating, "I did it. I'm the one you want." In a statement to Deputy Sheriff Christopher Blalock, appellant stated that Nash grabbed his wife by the neck and fired two gunshots by her head. Appellant recounted that he thought his wife was dead. He told Blalock that he jumped the victim, grabbed the gun, and "emptied the son-of-a-bitch."

Dr. William Massello, a forensic pathologist, testified that Nash was shot at least five times from behind. One of the wounds was consistent with the victim being shot while lying on the ground. Special Agent Jerry Humphries, an expert in blood spatter analysis, testified that the blood spatters found on the vehicles parked near Nash's body indicated that Nash was shot several times while moving toward the spot where his body was found and at least once while lying on the ground. David Gibbs, a forensic firearms expert, testified that at least one of the bullets was fired into Nash at a distance of less than two feet. Police officers found eleven shell casings at the scene that had been fired from Nash's firearm.

In appellant's defense, Donna Fitzgerald testified that after Ayers and Nash fell off the porch she saw her husband, Stuart Fitzgerald, fighting with appellant. Appellant and his brother knocked Fitzgerald to the ground and kicked and beat him while he lay unconscious. After checking on her husband, Mrs.

Fitzgerald saw Nash holding appellant with one hand and holding a gun to his neck. She tried to pull the gun away, but Nash told her that if she grabbed the wrong finger the gun would go off. She saw the red dot from the laser sight on appellant's face and ran toward the house. When she looked back, she saw three people struggling and then two gunshot flashes, followed by four more gunshots. She testified that she saw Nash take a step and fall and that appellant was standing a few feet away from Nash and was holding a gun at his side.

Appellant's wife testified that she saw Nash point the gun at appellant and tell him, "I'm going to kill you." She saw the red dot from the laser sight fixed on appellant's face and neck. She testified that she tried to grab the gun but Nash started choking her. She claimed she heard the gun discharge and afterward was able to get free from Nash. She testified that she thought that she had somehow shot Nash. She did not see her husband shoot Nash.

Appellant testified that Nash grabbed him around the neck and held the gun to his face. When a "commotion" distracted Nash, he loosened his grip and appellant was able to break free. Appellant testified that he heard his wife scream and that he looked back and saw Nash fire two shots by her head while holding her by the neck. Appellant said he charged Nash from a distance of about five to eight feet, knocked him off balance, grabbed the gun, and started shooting. Appellant stated that he did not know

- 4 -

where he shot Nash or how many times he pulled the trigger.

Appellant was arrested and charged with first degree murder and use of a firearm in the commission of murder. At trial, the judge refused to grant four of appellant's tendered jury instructions. The jury convicted appellant of second degree murder and use of a firearm in the commission of murder.

## II. JURY INSTRUCTIONS

"Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced." Stewart v. Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 514 (1990) (citation omitted). "An instruction is properly refused when it is unsupported by the evidence." Wilson v. Commonwealth, 25 Va. App. 263, 274, 487 S.E.2d 857, 863 (1997). On appeal, when the issue is a refused jury instruction, we view the evidence in the light most favorable to the proponent of the instruction. See Turner v. Commonwealth, 23 Va. App. 270, 275, 476 S.E.2d 504, 507 (1996).

## A. Instruction L

The trial judge granted several instructions pertaining to the malice requirement for first or second degree murder and the lack of malice as an element for the lesser-included offense of voluntary manslaughter. Instruction 9 instructed the jury to find the appellant guilty of voluntary manslaughter if it found the Commonwealth had failed to prove that the killing was

malicious but had proved the killing was intentional and "committed while in a sudden heat of passion upon reasonable provocation or in mutual combat." Instruction 11 defined the difference between malice and heat of passion.[1] Instruction 14 informed the jury that "the difference between murder and manslaughter is malice, when malice is present the killing is murder. When it is absent, the killing can be no more than manslaughter."

The trial judge refused appellant's proffered Instruction L. Instruction L stated:

> If you believe from the evidence that the conduct of the deceased was such as to reasonably provoke the passion and anger of

---

[1]Instruction 11 provided:

> Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.
>
> Heat of passion excludes malice when the heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear so as to demonstrate an absence of deliberate design to kill, or to cause one to act on impulse without conscious reflection. Heat of passion must be determined from circumstances as they appeared to the defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person.

the defendant and as a result, before a reasonable time had elapsed for the defendant's passion to subside and while still in the heat of said passion and anger and before his reason returned, he killed the deceased, you cannot find him guilty of a higher grade of offense than voluntary manslaughter.

Generally, a "cooling off" instruction is sought by the Commonwealth to enable the jury to find that an accused's passion kindled by an act of provocation had "cooled" so as to enable the accused to regain his or her reason before committing the homicide. See Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987) ("If [the Commonwealth] demonstrates that the accused reflected or deliberated, that his passion cooled, or that there was reasonable time or opportunity for cooling, then the [offense] is attributable to malice and not heat of passion."). In the present case, appellant requested the instruction to enable the jury to find the converse -- that he acted in the heat of passion and that sufficient time had not elapsed for his passion to "cool" before he shot Nash.

The giving of a "cooling off" instruction is discretionary. The instruction is generally given to explain how a person may be under the control of reason when performing a malicious act even though the person's actions were recently controlled by rage, anger, or the heat of passion. Although it may not be error for the court to instruct the jury in a proper case that they can find the killing occurred during the heat of passion if insufficient time had elapsed for "cooling off," it is not error

to refuse the instruction when the evidence does not support a need for explaining the concept. The trial court may not have erred had it granted Instruction L; however, it did not err by refusing it. No version of the evidence established that a period elapsed during the confrontation which reasonably could have been viewed by the jury as a "cooling off" period. At the time of the killing, appellant was either acting maliciously or was controlled by rage and killed in the heat of passion. Viewed in the light most favorable to the appellant, the evidence proved that appellant grabbed Nash's gun and shot him in immediate response to Nash's firing shots over appellant's wife's head. Very little time elapsed between the alleged provocation and the shooting; neither the Commonwealth nor the appellant was entitled as a matter of right to a "cooling" instruction.[2] See Potter v. Commonwealth, 222 Va. 606, 610, 283 S.E.2d 448, 450-51 (1981) (Commonwealth not entitled to "cooling" instruction where killing occurred in course of "continuous fight"). The court's other instructions fully and accurately instructed the jury as to the elements of murder and voluntary manslaughter under Virginia law. Accordingly, the trial court did not err in refusing to give Instruction L.

---

[2] Appellant notes that Instruction L was an "expanded version" of the third paragraph of Virginia Model Jury Instruction No. 34.220. Appellant argues that this paragraph is routinely included in the instructions where the heat of passion defense is asserted. However, as the commentary for the model instruction states: "If there is no issue pertaining to cooling of heat of passion, the third paragraph of the instruction should not be given."

The trial court instructed the jury that it may "infer malice from the deliberate use of a deadly weapon, unless from all of the evidence you have a reasonable doubt that malice existed."  Citing Jones v. Commonwealth, 187 Va. 133, 142, 45 S.E.2d 903, 911 (1948), and Bevley v. Commonwealth, 185 Va. 210, 215, 38 S.E.2d 331, 333 (1946), appellant argues that the trial judge should also have instructed the jury that "one who has been threatened, and who reasonably apprehends a future deadly attack, has a right to arm himself."  As to the right to arm oneself, appellant contends the trial judge erred by refusing Instruction O, which stated:

> When a person reasonably apprehends that another intends to attack him or a member of his family for the purpose of killing him or a member of his family or doing him or a member of his family serious bodily harm, then such person had a right to arm himself for his own necessary self-protection and the protection of his family, and in such case, no inference of malice can be drawn from the fact that he prepared for it.

Although the instruction is a correct statement of Virginia law, appellant's reliance on Jones and Bevley is misplaced.  In Bevley, the defendant attended a party where another guest had become intoxicated and violent.  Bevley, 185 Va. at 213, 38 S.E.2d at 332.  When the guest threatened to disarm another guest and shoot Bevley and several others, Bevley obtained a handgun from his car.  Id.  During an altercation shortly thereafter, Bevley shot and killed the guest.  At trial, Bevley was

- 9 -

confronted with the fact that his having consciously and deliberately armed himself could be considered as evidence of a malicious and premeditated killing, without an explanation that a person has a right to arm and defend himself or herself against a perceived attack.  Our Supreme Court held that Bevley was entitled to an instruction "'that one who has been threatened with murderous assaults and has reason to believe that such assaults will be made, may arm himself in his defense and in such case no inference of malice can be drawn from the fact of preparation for it.'"  Id. at 215, 38 S.E.2d at 333 (quoting with approval State v. Summers, 188 S.E. 873, 875 (W. Va. 1936)) (emphasis added).  Similarly, in Jones, the Court held that the refusal of a similar instruction was erroneous where the defendant obtained a handgun from his house after the victim had beaten and threatened to kill the defendant fifteen minutes before the killing.  Jones, 187 Va. at 141-42, 45 S.E.2d at 911-12.  As Jones and Bevley illustrate, the right to arm instruction is required only where the evidence fairly suggests that the accused obtained the firearm in preparation for a future deadly attack.  In both cases, the defendants consciously and deliberately armed themselves rather than seizing an available weapon to fend off an attack against themselves or family members.

Here, the evidence, viewed in the light most favorable to appellant, does not support giving a right to arm instruction.

Unlike the facts in Jones and Bevley, the evidence does not support the proposition that appellant armed himself with planning and deliberation for the purpose of being able to defend himself from a future attack.  Rather, accepting appellant's account of the incident, appellant seized Nash's firearm in order to repel an immediate threat of harm from Nash.  To disarm an assailant during an attack and to use the weapon against the attacker does not constitute exercising the right to arm oneself in order to avert or resist an anticipated deadly attack.  Cf. Wilson, 25 Va. App. at 274, 487 S.E.2d at 863 (right to arm instruction properly refused where accused brought gun to victim's apartment without perceiving any threat of harm from victim).  Furthermore, considering the court's other instructions on the law of self-defense and defense of others, the jury remained free to conclude that appellant did not maliciously kill Nash but rather disarmed and shot Nash in order to protect himself or his family from an immediate threat of death or serious bodily harm.  Accordingly, the trial judge did not err by refusing the right to arm instruction.

### C.  Instruction S

Instruction S, which the trial judge refused, provided in pertinent part that "where a killing takes place in combat, in determining whether or not the defendant thought that he or a member of his family was in danger of great bodily harm, the jury ought to consider the relative size and strength of the parties."

The trial court did not err in rejecting Instruction S. The trial court fully and accurately instructed the jury regarding justifiable self-defense[3] and defense of certain family members.[4] Although "[t]he court might well have told the jury that [the relative size and strength of the principals] might be considered in determining whether or not the accused did believe, and had reason to believe, that he stood in danger of serious bodily harm," its failure to further instruct the jury to consider this factor was not reversible error. Ballard v. Commonwealth, 156 Va. 980, 1005, 159 S.E. 222, 231 (1931); see also Hodges v. Commonwealth, 89 Va. 265, 273, 15 S.E. 513, 516 (1892). During closing argument, the parties remained free to

[3]Instruction 16 provided:

> If you believe that the defendant was without fault in provoking [the fight with Nash] and if you further believe that the defendant reasonably feared, under the circumstances as they appeared to him, that he was in danger of being killed or that he was in danger of great bodily harm, then the killing was in self-defense and you shall find the defendant not guilty.

[4]Instruction 17 provided:

> If you believe that the Defendant reasonably believed under the circumstances that his wife and/or child were without fault in provoking the altercation, and if you further believe that the Defendant reasonably feared, under the circumstances as they appeared to him, that wife and/or child were in danger of being killed or that either of them were in danger or great bodily harm, the killing was in defense of another, and you shall find the Defendant not guilty.

- 12 -

discuss the relative size and strength of the combatants.  The court's instructions enabled the jury to consider all relevant circumstances, including the relative sizes of the persons, without the trial judge emphasizing and isolating one particular factor as perhaps being more significant.

## D. Instruction P

Finally, we hold that the trial court did not err in rejecting appellant's proposed Instruction P. Instruction P explained the law of excusable homicide by self-defense, stating:

> If you believe that the Defendant was to some degree at fault in provoking or bringing on the fight with [the victim], and if you further believe that when attacked: (1) he retreated as far as he safely could under the circumstances; (2) in a good faith attempt to abandon the fight; and (3) made known his desire for peace by word or act; and (4) he reasonably feared, under the circumstances as they appeared to him, that he was in danger of being killed, or that he was in danger of great bodily harm, then the killing was in self-defense, and you shall find the defendant not guilty.

As previously noted, the trial court instructed the jury that a defendant who is without fault in bringing about an altercation has the right to use lethal force to defend himself or certain family members. We concur in the trial court's finding that no credible evidence supported the theory that the killing was excusable self-defense. Excusable self-defense may be asserted when the accused, who was at some fault in precipitating the confrontation with the victim, abandons the fight and retreats as far as he or she safely can before attempting to repel the attack. See McCoy v. Commonwealth, 125 Va. 771, 776, 99 S.E. 644, 646 (1919). Appellant neither abandoned the fight nor retreated. Appellant testified that he broke free from Nash's hold and tackled Nash. Cf. Smith v. Commonwealth, 17 Va. App. 68, 72, 435 S.E.2d 414, 417 (1993)

- 14 -

(excusable self-defense where defendant used deadly force after fleeing from armed intruders and being cornered in kitchen). Thus, viewing the evidence in the light most favorable to appellant, the evidence did not support a finding by the jury that appellant "retreated as far as he safely could under the circumstances." The trial judge did not err in rejecting Instruction P.

### III. SUFFICIENCY OF THE EVIDENCE

Second degree murder is defined as a "malicious killing" of another person. Turner v. Commonwealth, 23 Va. App. 270, 274, 476 S.E.2d 504, 506 (1996). It is undisputed that appellant intentionally shot the victim, James Nash. Appellant contends the evidence is insufficient to prove that he acted with malice. He argues that the evidence proved he killed Nash in self-defense or in defense of his wife and, therefore, he was entitled to an acquittal as a matter of law. Alternatively, he asserts that the jury could not have convicted him for an offense greater than voluntary manslaughter because the evidence proved as a matter of law that he killed Nash in the heat of passion and in mutual combat.

When the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). In a jury trial, the

- 15 -

credibility of the witnesses and the weight accorded to their testimony are matters solely within the province of the jury. Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979). Under familiar principles of appellate review, we may not disturb the jury's verdict unless it is plainly wrong or unsupported by the evidence. Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

### A. Malice

The element of malice requires the Commonwealth to prove that the accused "wilfully or purposefully" killed another. Essex v. Commonwealth, 228 Va. 273, 280, 322 S.E.2d 216, 220 (1984).

> Malice may be either express or implied. . . . "Express malice is evidenced when one person kills another with a sedate, deliberate mind, and formed design. . . . Implied malice exists when any purposeful, cruel act is committed by one individual against another without any, or without great[,] provocation. . . ."

Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997) (quoting Essex, 228 Va. at 280, 322 S.E.2d at 220). Implied malice may be inferred from "conduct likely to cause death or great bodily harm, wilfully or purposefully undertaken." Essex, 228 Va. at 281, 322 S.E.2d at 220 (emphasis added).

Viewed in the light most favorable to the Commonwealth, the evidence is sufficient to prove that appellant maliciously shot and killed Nash. Appellant admitted that he intentionally shot Nash. The jury could infer malice from appellant's deliberate

use of a deadly weapon.  See Morris v. Commonwealth, 17 Va. App. 575, 579, 439 S.E.2d 867, 869-70 (1994).  Other evidence substantiated the finding that appellant acted with malice. Buddy and Kay Ayers testified that appellant charged Nash and began punching him violently when Nash stood after falling into the woodpile.  Appellant shot Nash at least five times from behind, one of which was from a distance of approximately two feet while Nash was lying face down on the ground.  Indeed, appellant testified that he "emptied" the firearm, firing bullets into Nash until he hit the ground.  From the foregoing evidence, the jury could have reasonably concluded that appellant willfully and purposefully shot Nash several times in the back and killed him.  See Waller v. Commonwealth, 178 Va. 294, 313, 16 S.E.2d 808, 815 (1941); Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992).

### B.  Affirmative Defenses

We next consider whether the evidence proved as a matter of law the appellant's affirmative defenses:

### 1.  Self-defense/Defense of Others

Self-defense and defense of others are affirmative defenses for which the accused has the burden of persuading the fact finder that he or she acted in defense of self or another to the degree necessary to raise a reasonable doubt about his or her guilt.  See Smith, 17 Va. App. at 71, 435 S.E.2d at 416; Foster v. Commonwealth, 13 Va. App. 380, 385, 412 S.E.2d 198, 201-02

(1991) (recognizing defense of others "is commensurate with self-defense").  Although undisputed facts may establish self-defense as a matter of law, see, e.g., Hensley v. Commonwealth, 161 Va. 1033, 170 S.E. 568 (1933), whether the accused establishes that he or she acted in either respect is generally a question of fact.  See Yarborough v. Commonwealth, 217 Va. 971, 979, 234 S.E.2d 286, 292 (1977).

A claim of self-defense may be either justifiable or excusable; if it is either, the accused is entitled to an acquittal.  See Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958).  "Justifiable homicide in self-defense occurs [when] a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself."  Id. (emphasis added).  "If an accused 'is even slightly at fault' at creating the difficulty leading to the necessity to kill, 'the killing is not justifiable homicide.'"
Smith, 17 Va. App. at 71, 435 S.E.2d at 416.
> Excusable homicide in self-defense occurs
> where the accused, although in some fault in
> the first instance in provoking or bringing
> on the difficulty, when attacked retreats as
> far as possible, announces his desire for
> peace, and kills his adversary from a
> reasonably apparent necessity to preserve his
> own life or save himself from great bodily
> harm.

Bailey, 200 Va. at 96, 104 S.E.2d at 31 (citations omitted).

"[A] person asserting a claim of defense of others may do so

only where the person to whose aid he or she went would have been legally entitled to defend himself or herself." <u>Foster</u>, 13 Va. App. at 385, 412 S.E.2d at 201 (citing with approval 40 Am. Jur. 2d <u>Homicide</u> § 171 (1968)). Thus, one may be justified in using deadly force to defend another person where he or she reasonably believes that the person defended faces an imminent threat of serious bodily harm or death and that such person was not at fault in bringing about the necessity to use the deadly force. See <u>Foster</u>, 13 Va. App. at 385-86, 412 S.E.2d at 201-02; <u>see also</u> 1 Wayne R. LaFave, <u>Substantive Criminal Law</u> § 5.8 (1986).

Viewed in the light most favorable to the Commonwealth, the evidence is insufficient to prove as a matter of law that appellant killed Nash in self-defense or in defense of others. "[I]n order that [a homicide] may be justifiable as self-defense, the defendant must have been free from all fault or wrong-doing on his part which had the effect to provoke or bring on the difficulty." <u>Bell v. Commonwealth</u>, 2 Va. App. 48, 56, 341 S.E.2d 654, 658 (1986) (citation omitted). Considering Buddy and Kay Ayers' testimony that appellant initiated the altercation by attacking Nash at the woodpile, the jury could have reasonably concluded that appellant was "at fault" in provoking the difficulty with Nash. On this basis, the jury could have found that appellant, as the instigator of the affray, was not entitled to an acquittal based on justifiable self-defense.[5]

---

[5]Because, as we held in Part II(D), the evidence, viewed in the light most favorable to appellant, is insufficient to support

– 19 –

In addition, the jury could reasonably have found that appellant did not kill Nash upon the reasonable belief that Nash posed a threat of serious bodily harm or death to either appellant or his wife. As the trier of fact, the jury had the

> right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

Painter v. Commonwealth, 210 Va. 360, 367, 171 S.E.2d 166, 171 (1969). The jury could have disbelieved appellant's evidence that Nash held a gun to appellant's neck, grabbed appellant's wife, and fired two shots by her head. See Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980) ("[E]ven if the defendant's [evidence] was not inherently incredible, the trier of fact need not have believed the explanation. . . ."). Thus, the jury could have reasonably concluded that Nash committed no "overt act indicating [his] imminent intention to kill or seriously harm the accused" or his wife, as is required before one may lawfully use deadly force to defend oneself or others. Smith, 17 Va. App. at 71-72, 435 S.E.2d at 417. Furthermore, even if the jury had believed appellant's account of the events, it could have reasonably

(..continued)
a jury instruction on excusable self-defense, the evidence, when viewed in the light most favorable to the Commonwealth, is palpably insufficient to prove that appellant committed excusable homicide in self-defense.

concluded that appellant had quelled any danger to him or his wife once he had disarmed Nash.  Accordingly, we cannot say as a matter of law that appellant killed Nash in self-defense or in defense of others.

## 2. Heat of Passion

We further hold that the evidence does not prove as a matter of law that appellant killed Nash in the heat of passion. To the contrary, the evidence is sufficient to support the jury's conclusion that appellant did not shoot Nash in the heat of passion. "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986) (citations omitted). "Heat of passion" refers to "the furor brevis which renders a man deaf to the voice of reason." Canipe, 25 Va. App. at 643, 491 S.E.2d at 753. To show that a homicide occurred in the heat of passion, the evidence must prove that the accused killed while motivated by "passion" and upon "reasonable provocation." Id. Although undisputed facts may prove as a matter of law that a killing was in the heat of passion and, thus, no more than involuntary manslaughter, see Tillman v. Commonwealth, 185 Va. 46, 53, 37 S.E.2d 768, 773 (1946), whether an accused killed in the heat of passion is generally a question of fact. See Canipe, 25 Va. App. at 643, 491 S.E.2d at 754.

As noted in Part III(B)(1), the jury could have disbelieved any or all of the evidence presented by appellant asserting that Nash grabbed appellant's wife around the neck and fired gunshots by her head. See Durham v. Commonwealth, 214 Va. 166, 169, 198 S.E.2d 603, 606 (1973); Rollston v. Commonwealth, 11 Va. App.

- 22 -

535, 547, 399 S.E.2d 823, 830 (1991).  Moreover, the jury could have reasonably concluded that any of Nash's other purported actions, namely refusing to leave the party and accidently knocking over Fitzgerald's woodpile, did not constitute "reasonable provocation" for killing him.  Accordingly, the jury could have reasonably concluded that appellant acted with malice and did not kill Nash in the heat of passion.

### C.  Mutual Combat

Finally, we hold that the evidence fails to support appellant's contention that he killed Nash in the course of mutual combat.  For combat to be "mutual," it must have been voluntarily and mutually entered into by both or all parties to the affray.  See Smith, 17 Va. App. at 72, 435 S.E.2d at 417.  It is settled that "[o]ne who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as mutual combat."  Harper v. Commonwealth, 165 Va. 816, 820, 183 S.E. 171, 173 (1936).  In this case, the evidence, viewed in the light most favorable to the Commonwealth, established at most that Nash started fighting with appellant after appellant struck Nash by the woodpile.  The jury could have reasonably concluded that Nash, if he did enter the altercation with appellant, did not do so voluntarily.

For the foregoing reasons, we hold that the trial court did not err in refusing appellant's Instructions L, O, P and S.  We further conclude that the evidence is sufficient to support the

second degree murder and use of a firearm in the commission of murder convictions.  Accordingly, we affirm the convictions.

<u>Affirmed</u>.