COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Humphreys and Kelsey
Argued at Richmond, Virginia

UNPUBLISHED

MONDRELL LAQUINT SMITH, SR.

MEMORANDUM OPINION[*] BY
v.      Record No. 0114-12-2                    JUDGE ROBERT J. HUMPHREYS
                                                JANUARY 29, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Brent A. Jackson (Brent A. Jackson & Associates, P.C., on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Mondrell Laquint Smith, Sr., ("Smith") appeals his conviction by a jury in the trial court

for felony cruelty to an animal resulting in death, in violation of Code § 3.2-6570(F). Smith's

only argument on appeal is that the trial court erred in denying his proffered self-defense jury

instructions. For the following reasons, we reverse the judgment of the trial court.

I. BACKGROUND

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the

evidence in the light most favorable to the proponent of the instruction." Commonwealth v.

Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002). In that light, the facts of this case are as

follows.

On the morning of February 2, 2011, Smith's wife, Ashley Nicole Smith ("Mrs. Smith"),

stepped outside onto the upper back deck of their home with her two-year-old son to feed her

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

dog. When she started scraping food into her dog's bowl she heard growling. She turned to find a sixty-pound chocolate lab growling on the steps to the deck, about six feet away from her. Mrs. Smith was terrified for herself and her son. She could not move and "was in shock." To get back into her house, she would have had to walk in the direction of the growling dog. The dog was baring his teeth, growling through his teeth, drooling, and lunging at her. Mrs. Smith's "shooing" and waving her arm made the dog madder, and it seemed like he was not going to stop. All she could do was scream for her husband.

Mrs. Smith's scream scared Smith; he had not heard her scream like that before. He heard a dog growling. He jumped out of bed, grabbed his shotgun and some birdshot, and proceeded to the back door. He got to the door about ten seconds after Mrs. Smith screamed and called his name. Smith's appearance did not cause the dog to retreat. When he got to the door, Mrs. Smith and the son were three to four feet to his left, and the brown lab was to his right. Smith described his wife's appearance: "She was clutching my son and her face, she was all fear. She was scared." He "just wanted to take control, [and] do what [he] had to do to get them safe." The dog was on the stairs leading up to the deck, about four feet away from Smith. There was a gate with a broken latch and railing at the top of the stairs but neither Smith nor Mrs. Smith recalled if it was open or closed.[1] The dog was barking, baring his teeth, looked like he was "ready to bite," and "[l]ooked like he was ready to attack." Smith had previously acquired knowledge from his wife as to this dog's aggressive behavior. However, Smith also testified that he was not paying attention to what dog it was when he shot the dog.

Mrs. Smith testified that when Smith came to the door, she felt comfortable enough to run past him. Mrs. Smith grabbed her son up, ran inside and set her son down, and returned to

---

[1] The broken gate was on a wheel and could easily be pushed open, kind of like "a little doggy door." It did not give Smith a sense of security from the dog.

the door to check on her husband. When she came to the door she heard one shot. Smith could not say whether he knew his wife and son were already in the house when he shot the gun. "I can't say that exactly. I was facing the dog. I mean, like I said, it was a split second. I mean, I analyzed the situation and shot." Smith believed that if he had not shot the dog, the dog probably "would have [come] on up."

After Smith shot the dog, the dog cringed and took off. A veterinarian testified that the dog bled to death and that the pellets only hit the dog in the head and front part of the chest.

Officer Richard Tisdale testified that Smith "stated that he saw the dog back down to the bottom of the stairs and was backing away and he leveled his shotgun and fired one time." The Commonwealth also emphasized Smith's response to its question: "It was a shoot first, ask questions later kind of situation?" Smith responded: "Yes ma'am."

The trial court found that Smith's wife and child were in the house when he shot the dog and concluded that Smith should have retreated into his home and therefore refused to give Smith's proffered self-defense and defense of others instructions to the jury.

## II. ANALYSIS

Smith's single assignment of error is that the trial court "erred in denying the appellant's [self-defense] instruction." The Court's "'sole responsibility in reviewing jury instructions is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). A jury instruction is proper if supported by the evidence, and "more than a scintilla of evidence is necessary" to support an instruction requested by the defendant. Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998).

The jury convicted Smith of violating Code § 3.2-6570(F):

> Any person who: (i) tortures, willfully inflicts inhumane injury or pain not connected with bona fide scientific or medical experimentation or cruelly and unnecessarily beats, maims or mutilates any dog or cat that is a companion animal whether belonging to him or another; and (ii) as a direct result causes the death of such dog or cat that is a companion animal . . . is guilty of a Class 6 felony.

The two jury instructions rejected by the trial court in this case are as follows:

> 1) The Defendant may avail himself of the defense of self-defense only where he reasonably believes, based on the attendant circumstances, that the person defended, was in danger of bodily harm or of being killed, is without fault in provoking the fray/event/incident, then you shall find the Defendant not guilty by reason of self-defense.

> 2) The Defendant may avail himself of the defense of self-defense only where he reasonably believes, based on the attendant circumstances, that the person defended is without fault in provoking the fray/event/incident.

The rejected instructions properly state the law of self-defense and defense of others. "'Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself.'" Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977) (quoting Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958)).[2]

---

[2] While in this case Smith killed a dog, and not another human, the law of self-defense still applies.

> From time immemorial people have been attached to their dogs and their dogs to them. Tobit's dog went with him. The anthology of every land is filled with eloquent tributes of affection, but their record is not spotless. Atavistic marauded strains inherited from a savage ancestry sometimes develop; they revert to type and kill from a love of slaughter. It is then that they become a public nuisance and a public menace, and to them the ordinary rules of self-defense apply, for men may protect their property as they may protect their person.

Stated another way, to "justify the use of deadly force, the defendant must have reasonably feared death or serious bodily injury from his victim, and there must have been an overt threat." Peeples v. Commonwealth, 30 Va. App. 626, 634, 519 S.E.2d 382, 386 (1999). Further, "one may be justified in using deadly force to defend another person where he or she reasonably believes that the person defended faces an imminent threat of serious bodily harm or death and that such person was not at fault in bringing about the necessity to use the deadly force." Lynn v. Commonwealth, 27 Va. App. 336, 353, 499 S.E.2d 1, 9 (1998).

It is the accused's burden to prove that he acted in defense of himself or another, and whether he did so or not is generally a question of fact that should be left to the jury to determine if any credible evidence would support such a finding. "Self-defense and defense of others are affirmative defenses for which the accused has the burden of persuading the fact finder that he or she acted in defense of self or another to the degree necessary to raise a reasonable doubt about his or her guilt." Id. at 352, 499 S.E.2d at 9. "Although undisputed facts may establish self-defense as a matter of law, whether the accused establishes that he or she acted in either respect is generally a question of fact." Id. (internal citation omitted). "[U]nder a claim of self-defense, [ ] the necessity of the accused's conduct is to be judged by the facts as they reasonably appeared to him . . . ." Rasnake v. Commonwealth, 135 Va. 677, 697, 115 S.E. 543, 544 (1923). The jury has the

> "right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt if any, of a person charged with a crime."

---

Willeroy v. Commonwealth, 181 Va. 779, 781, 27 S.E.2d 211, 211-12 (1943) (Willeroy shot two dogs that attacked and killed five of his chickens).

Lynn, 27 Va. App. at 354, 499 S.E.2d at 10 (quoting Painter v. Commonwealth, 210 Va. 360, 367, 171 S.E.2d 166, 171 (1969)). "It is immaterial that the jury could have reached contrary conclusions. If a proffered instruction finds any support in credible evidence, its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).

In the present case, taking the evidence in the light most favorable to Smith, more than a scintilla of evidence supports the giving of the proffered self-defense instructions. Smith testified that when he heard his wife scream it scared him as it was unlike any scream he had heard from her. He also heard a dog growling. When he got to the door, the dog did not retreat. The dog was only about four feet from him on his right, and his wife and two-year-old son were three or four feet to his left. He observed his wife overcome with fear, clutching their son. The dog was barking, baring his teeth, and appeared ready to bite and attack. Smith believed that the dog would have come on up to the deck if he had not shot the dog. Whether the gate was open or closed, the latch was broken, it could easily be opened, and it did not give Smith a sense of security from the dog. Smith could not say that he knew his wife and son were inside the house when he shot; he made a split-second decision and shot the dog.

The reasons the trial court gave for rejecting Smith's self-defense and defense of others instructions clearly indicate that the trial court made factual findings that were properly within the exclusive province of the jury. From the evidence adduced at trial, a reasonable fact finder *could* have concluded that Smith did not know his wife and son were inside the house, that he reasonably feared that the vicious sixty-pound dog who was growling and baring his teeth in close proximity to Smith was about to do serious bodily harm to him and/or his wife and small child, and that the circumstances necessitated the use of force to protect himself and his family from the unpredictable behavior of the dog. Determining whether this evidence was credible and actually supported a conclusion that Smith acted in self-defense or defense of others was the

- 6 -

responsibility of the jury, not that of the trial court.  Therefore, we hold that the trial court erred in refusing to instruct the jury on the law of self-defense and defense of others.

Accordingly, we reverse the judgment of the trial court and remand for a new trial if the Commonwealth is so advised.

<u>Reversed and remanded.</u>