UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Callins, White and Bernhard

DIONDRE BAKER

v.      Record No. 0590-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
SEPTEMBER 16, 2025

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
James C. Hawks, Judge Designate

(James S. Ellenson, on brief), for appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.

After a four-day trial, a jury convicted Diondre Baker of 26 felonies[1] arising from a

gang-related shooting that occurred on April 27, 2019.  The trial court sentenced Baker to a total

of 183 years in prison, with 135 years suspended, leaving 48 years to be served.  On appeal,

Baker argues that the trial court erred in "granting" his motion *in limine* to prohibit certain

evidence related to gang participation, in denying his motion to sever, and in denying his motion

to strike.[2]  Finding no error, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Baker was convicted of attempted murder (four counts), maliciously shooting at an
occupied vehicle (eight counts), use of a firearm in the commission of a felony (six counts),
criminal street gang participation (four counts), attempted capital murder, aggravated malicious
wounding, felony reckless handling of a firearm, and discharge of a firearm in public, causing
injury.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument."  *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

BACKGROUND

In February 2019, Leondre Johnson, a member of the YNGI gang, was shot and killed by Marquay White, who was a member of the rival Vanblocc gang. After Johnson's murder, there were several shootings "back and forth" between the two gangs, including "several" shootings of Vanblocc members and their families in March and early April 2019. YNGI members began to identify their affiliation by "holding up fours"—or four fingers—for "40," which was Johnson's nickname.

Around 9:00 p.m. on April 27, 2019, Diondre Baker went to a restaurant to pick up food for his father. Javonte Rountree, Baker's cousin and a person associated with Vanblocc, went with Baker, as did both their girlfriends. While waiting in the parking lot, Rountree saw Antonio "Yoc" Jefferson arrive. Jefferson was the leader of YNGI. Rountree went into the restaurant "to make sure [Baker] was okay." Jefferson confronted Baker and asked Baker what he was doing "dropping fours" in a hostile tone of voice. "Dropping fours" is a hand sign inverting a gang's ordinary symbol and is meant to convey disrespect for a rival gang. Rountree told Jefferson that if there were "any issues" with Baker, Jefferson could "holler at him" instead of Baker since Rountree was older than Baker. In response, Jefferson lifted his shirt and "flashed" a handgun, visible in his waistband; Jefferson did not remove the gun from his waistband. Baker and Rountree, who were unarmed, left the restaurant while their girlfriends stayed and picked up the food.

Baker went home and sat outside on the porch, upset about what had happened at the restaurant. Davonta Garvin, another member of Vanblocc, arrived in a silver Acura. Baker and Rountree got into the Acura with Garvin. Garvin drove, Baker sat in the passenger seat, and Rountree sat behind Baker. There were at least two firearms in the Acura: a semiautomatic pistol and a rifle. Rountree had the handgun, and Baker took the rifle.

Garvin drove to the Wilson Pines apartment complex, Jefferson's residence and a "known hangout" for YNGI members. When they arrived, they saw a group of YNGI members standing near a dark-colored SUV. The group included Jefferson, Tamarrea Walker, Kenneth Cobb, Kenneth Copeland, and Byron "Drizzy" Taylor. The three Vanblocc members in the Acura decided to "head[] back out of that neighborhood." But as they were leaving, Taylor shot at the Acura, though missed it. Rountree "grabbed [his] firearm and shot it out the window up in the air to scare the [YNGI] guys off."

Garvin later "made a U-turn in the middle of the street to go back past the entrance of Wilson Pines." As they did so, the dark-colored SUV left Wilson Pines at "full speed" and "jumped down" behind Acura. Baker thought that they were being followed by YNGI. Garvin made several turns to try to "duck" the SUV. Rountree saw that the SUV's windows were rolled down and the occupants were "flashing guns" at the Acura. Rountree identified the SUV's occupants as the same five YNGI members who had been standing beside it when he, Garvin, and Baker arrived at the apartment complex.

Garvin stopped at a stop sign at the intersection of Suburban Drive and East Washington Street. Baker stepped out into the street with the rifle. When the SUV stopped at the intersection a block away, signaling a turn towards the Acura, Baker opened fire on the SUV while it was stopped. No one from the SUV fired back.

Cobb, the driver of the SUV, was shot twice in the torso. As Baker continued to fire, Cobb turned right onto Suburban Drive, away from Baker, and crashed into a white pickup truck at the next intersection. Cobb lost consciousness and went into cardiac shock. Baker fired eight shots; eight 7.62-millimeter cartridge casings were collected from the scene. Cobb was airlifted to a nearby hospital and placed on life support. Cobb did not regain consciousness for two months and had to relearn how to eat, walk, bathe, and use the bathroom. As a result of the

shooting, Cobb was blinded and had limited mobility in his left foot. The next day, Suffolk Police Detective Jennifer Attard saw Taylor, another occupant of the SUV during the incident, at Obici Hospital with a gunshot wound to his leg. Detective Joyce Williams saw Copeland, who had also been an SUV occupant, at Norfolk General Hospital with a gunshot wound to his right thigh.

Lieutenant Brian Hearn provided *Miranda* warnings to Baker at an interview five days after the shooting. Baker initially denied being present or knowing anything about the shooting. He later admitted that he was present and that he had fired the rifle repeatedly at the SUV. Baker stated that he had shot at the SUV because he was "mad" and "scared." Baker told the police that he would not have shot at the SUV if Jefferson had not shown the weapon at the restaurant.

Baker consented to a search of his cell phone. Detective Tiffany Folkers found numerous text messages in a "group chat" among Vanblocc members. The chat included messages stating, "Man let's go shoot they shit," "This back an forth shit can't keep going on somebody need to die," and "Im going get two guns." Investigator Kristi Gaines qualified as an expert "in criminal street gangs and gang culture, specifically those in Suffolk." Investigator Gaines opined that the text messages were consistent with an ongoing gang feud between Vanblocc and YNGI. In her opinion, the text messages included references to shooting and killing YNGI members.

ANALYSIS

I. Motion to Sever

Before trial, Baker filed a combined "Motion to Sever Gang Participation Charges and Have Separate Trials, and Motion in Limine." The Commonwealth filed its response to both motions on May 15, 2023. By order entered on June 12, 2023, the trial court recited that on May 18, 2023, it heard "testimony and argument of counsel" on the motion to sever and held that "said motion was over-ruled on the grounds stated to the record and exception noted."

- 4 -

Under Rule 5A:8(a), Baker had to file the pertinent transcripts within 60 days of the March 26, 2024 final order of conviction—meaning no later than May 28, 2024.[3]  Baker did not file the transcript of the May 18, 2023 motions hearing and did not file a written statement of facts in lieu of a transcript.  *See* Rule 5A:8(c).  "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered."  Rule 5A:8(b)(4)(ii).  "If . . . the transcript [or statement of facts] is indispensable to the determination of the case, then the requirements for making the transcript [or statement of facts] a part of the record on appeal must be strictly adhered to."  *Veldhuis v. Abboushi*, 77 Va. App. 599, 606-07 (2023) (alterations in original) (quoting *Bay v. Commonwealth*, 60 Va. App. 520, 528 (2012)).

Baker claims "that the Commonwealth proffered inadequate reasons to conduct a joint trial on all twenty-eight charges and that the trial court erred in rejecting defense counsel's motion to sever and have the gang participation charges separately, because justice required separate trials and the criteria of Rule 3A:6(b) was not satisfied."  Since a transcript of those proceedings, or a written statement of facts, is indispensable to our review of this alleged error, the absence of such a record prevents us from evaluating Baker's argument.  Consequently, it is waived.  *See* Rule 5A:8(b)(4)(ii).

II.  Motion *in Limine*

Baker asserts that the trial court erred "in *granting* Baker's motion in limine to prohibit certain evidence related to gang participation."  (Emphasis added).  The trial court in fact denied the motion.  Baker fails to assign error to that ruling of the trial court.  The Commonwealth pointed out the apparent misstatement in its brief.  Baker has filed no reply brief and no other

---

[3] Sixty days after entry of the final order was Saturday, May 25, 2024, and Monday, May 27, 2024, was Memorial Day, so the transcript was due on Tuesday, May 28, 2024.  *See* Code § 1-210(B).

pleading seeking to amend his assignment of error. Baker's assignment of error does not comply with Rule 5A:20(c)(2), so it is waived. *Barnes v. Commonwealth*, 80 Va. App. 588, 595 (2024); *see also Brooks v. Commonwealth*, 61 Va. App. 576, 583 (2013) ("The purpose of the assignment of error is to alert the appellate court and opposing counsel to the precise error allegedly committed below and to limit review to that issue.").

Yet Baker has failed to provide an indispensable transcript of the hearing on the motion *in limine*. The trial court's order addressing the motion indicates that it considered "testimony and argument of counsel" before overruling the motion "on the grounds stated to the record." Without a transcript of those proceedings, or a written statement of facts, we are unable to evaluate any argument that the trial court erred in denying the motion *in limine*. *See* Rule 5A:8(b)(4)(ii).

III. Motion to Strike

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might

differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor*, 294 Va. at 512). "Circumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

A.  Specific intent to kill

Baker argues that the Commonwealth failed to establish a specific intent to kill the individuals named in the attempted murder charges.[4]  He asserts that there was no evidence that he knew who was in the SUV, or how many.  The trial court correctly observed that "the specific intent to kill doesn't require that the individual know the name or identity of the person he intends to kill, but the issue is whether the Commonwealth's case has put these five individuals in the vehicle."  The trial court held that "the evidence doesn't clearly establish that any or all of those named individuals were not in the vehicle."  On the other hand, Rountree testified that he saw the same five individuals he had seen at the Wilson Pines apartment complex in the SUV.

---

[4] Baker initially argued the lack of specific intent only with respect to the attempted murder charge naming Jefferson, Case No. CR19002229.  The argument quickly broadened to include all five attempted murder charges.  Baker's renewed motion to strike, after all the evidence, simply incorporated "the same argument as last time."

The jury could conclude that Baker, then seated in front of Rountree, could have seen that as well.

"First-degree murder includes, among other things, 'murder . . . by any willful, deliberate, and premeditated killing.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Commonwealth v. Herring*, 288 Va. 59, 77 (2014)). "'In the context of attempted murder, the evidence must show "specific intent to kill the victim,"' along with an overt act." *Id.* (quoting *Herring*, 288 Va. at 77). "Whether the intent required for attempted murder exists 'is generally a question for the trier of fact.'" *Id.* (quoting *Nobles v. Commonwealth*, 218 Va. 548, 551 (1977)) (the "determination of defendant's intent 'presents a factual question which lies peculiarly within the province of the jury'" (quoting *Ingram v. Commonwealth*, 192 Va. 794, 801-02 (1951))). The "mental state required for attempted murder is the intent to kill a human being, not a *particular* human being." *Id.* at 231 (quoting *People v. Stone*, 46 Cal. 4th 131, 134 (2009)). So, as we explained in *Secret*, the intent need not attach to a specific individual. Instead, the Commonwealth's evidence is sufficient if "the natural and probable consequence" of the defendant's actions was that the victims—whomever they happened to be—would be killed. *Id.* We expressly rejected the argument that the defendant had to know the specific identity of each victim. *Id.*

The evidence permitted a reasonable jury to conclude that the five individuals Baker had seen at the Wilson Pines apartment complex were in the SUV. Thus, the trial judge properly left the jury to decide whether the Commonwealth had carried that burden. As in *Secret*, the record supports the trial court's finding and its denial of the motion to strike.

B. Self-defense

At trial, Baker initially argued self-defense only for the charges of shooting at an occupied vehicle, specifically citing those indictment numbers. When he renewed the motion, he

"incorporate[d] the same argument as last time," and extended "the same argument" to the related charges of "use of a firearm in the commission of a felony coupled with the gang participation charges." "Making one specific argument does not preserve a separate legal point on the same issue for review." *Rompalo v. Commonwealth*, 72 Va. App. 147, 156 n.3 (2020) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). Therefore, the self-defense argument is preserved only for the charges of shooting at an occupied vehicle, the related charges of use of a firearm, and the gang participation charges. Rule 5A:18.

"'Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault,' referred to as justifiable self-defense, and 'self-defense with fault,' known as excusable self-defense." *Washington v. Commonwealth*, 75 Va. App. 606, 617 (2022) (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)). "The first type occurs when the accused is '*without any fault on his part in provoking or bringing on the difficulty*.'" *Id.* (quoting *Avent v. Commonwealth*, 279 Va. 175, 199 (2010)).

> In contrast, the second type of self-defense occurs when the accused is at "some fault in the first instance in provoking or bringing on the difficulty" but, when attacked, he "retreats as far as possible, announces his desire for peace," and acts "from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm."

*Id.* (quoting *Bell*, 66 Va. App. at 487). The trial court instructed the jury on both theories.

"The law in this area is clear. A defendant bears the burden of introducing evidence supporting the affirmative defense of self-defense." *Washington*, 75 Va. App. at 617 (citing *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019)). "To meet this burden, the defendant at trial must 'prove[] circumstances' of self-defense sufficient to 'create a reasonable doubt' of his guilt." *Id.* (alteration in original) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "'Whether an accused' meets this threshold 'is a question of fact.'" *Id.* (quoting *Smith*, 17 Va. App. at 71). "Although undisputed facts may establish self-defense as a matter of law,

- 9 -

whether the accused establishes that he . . . acted in [self-defense] is generally a question of fact." *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998) (citation omitted), *aff'd*, 257 Va. 239 (1999).

Angry about Jefferson's actions at the restaurant, Baker armed himself and rode with two other Vanblocc gang members to a "known hangout" for YNGI gang members. Other evidence detailed an ongoing feud between the two gangs. A reasonable jury could infer that Baker intended to seek out YNGI gang members in order to commit violence. "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" *Smith*, 17 Va. App. at 71 (quoting *Bell*, 2 Va. App. at 58).

Baker also did not retreat as far as possible from the confrontation. Instead, he and the other Vanblocc gang members stopped driving away. Baker got out of the car armed with a rifle, stood in the street, and opened fire on the SUV after it came to a stop. There was no evidence that Baker announced any "desire for peace." The actions attributed to the occupants of the SUV as they approached the intersection were "flashing guns," "roll[ing] the[ir] windows down, [and] sticking the[ir] firearms out the vehicle." A reasonable jury could conclude that those actions did not demonstrate that Baker faced a "reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *See Washington*, 75 Va. App. at 617.

Here, the judgment of the trial court was neither plainly wrong nor unsupported in light of the testimony and the physical evidence. The record supports the trial court's decision to deny the motion to strike.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*