COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Clements
Argued at Richmond, Virginia


DANIEL JASON GONZIN

v.      Record No. 1441-10-2

COMMONWEALTH OF VIRGINIA
                                                          OPINION BY
WALTER COUSINS, JR., S/K/A                   JUDGE ROBERT J. HUMPHREYS
  WALTER ANTHONY COUSINS, JR.                    OCTOBER 25, 2011

v.      Record No. 1480-10-2

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
                       William R. Shelton, Judge Designate

            H. Evans Thomas, V (H. Evans Thomas, V, P.C., on brief), for
            appellant Daniel Jason Gonzin.

            James E. Ghee (Williams, Luck & Williams, on brief), for appellant
            Walter Cousins Jr., s/k/a Walter Anthony Cousins, Jr.

            Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on briefs), for appellee.


      Walter Cousins, Jr. ("Cousins") and Daniel Jason Gonzin ("Gonzin") appeal their

convictions in the Circuit Court of Appomattox County for aggravated sexual battery.[1]  Cousins

and Gonzin both argue on appeal that the evidence presented at trial was insufficient as a matter

of law to support their convictions.[2]  Specifically, Cousins and Gonzin assert on the appeal that

_____

      [1] Cousins and Gonzin were tried jointly.

      [2] Because these cases involve interrelated facts and the same legal issue, we have
consolidated them for purposes of our decision.  See, e.g., Surles v. Mayer, 48 Va. App. 146,
155, 628 S.E.2d 563, 567 (2006).

the evidence presented at trial failed to establish they committed the elevated felony offense of aggravated sexual battery. We agree with the arguments made by Cousins and Gonzin, reverse the judgment of the trial court, and remand the matters for resentencing on the lesser-included offense of sexual battery.

## I. Background

On April 20, 2008, J.M., who was seventeen years old at the time, was working the night shift at the Dairy Queen. Cousins, known to J.M. as T.C., came to the Dairy Queen to get ice cream and then returned to talk to J.M. while J.M. was outside smoking. Cousins asked J.M. if she would like to "come over later" because he was "having people over." Throughout the evening, the two "were just texting, talking back and forth," and Cousins continued to inquire if J.M. "wanted to come over later." When she finished her shift, J.M. began driving home. But then Cousins called her and "was just like just come over, there's a couple of people over." So J.M. "went back" to an address Cousins had provided on Plant Drive in Appomattox, which was a trailer belonging to Gonzin.

When she arrived at the trailer, Cousins came out to the car and walked J.M. to the trailer. J.M. was at first "kind of hesitant" to stay when she realized there were only two additional men besides Cousins in the trailer, namely Gonzin and a man named David. J.M. did not know Gonzin or David. The three men encouraged J.M. to "just sit here and watch TV and [to] just hang out and talk." J.M. agreed because she thought Cousins was her friend. She thought she could trust him and that it would be okay. The three men offered J.M. liquor and beer, but she declined. For a while, J.M. and the three men were "just sitting there watching TV, just talking and hanging out."

At some point, Cousins told J.M. he wanted to show her something in the back room. As J.M. followed Cousins down the hall, she didn't realize that Gonzin was following along behind

her. J.M. followed Cousins into the back bedroom. Gonzin then entered the room, shut off the light, and closed the door. Gonzin grabbed J.M.'s arms as Cousins began taking off her pants. J.M. was saying "stop, stop," but they got her pants off, ripping her belt. The two men were telling J.M. to "just be quiet, just be quiet." When Cousins got J.M.'s pants and underwear off, he threw them against the wall and the two men put J.M. on the floor. Cousins and Gonzin pulled up J.M.'s bra and shirt and began kissing her neck and breasts. Gonzin then inserted his penis into J.M.'s mouth as Cousins put his fingers in her vagina. J.M. could not move her head, and Gonzin told her to "be still." When J.M. bit down lightly on Gonzin's penis, he removed it, but then he re-inserted it and "just kept going back and forth," until finally "he just got up and pulled his pants back up and left." Meanwhile, Cousins had spread J.M.'s legs and was "doing oral sex" on her vagina. After Gonzin left the room, Cousins "tried to insert his penis" into J.M., but she pleaded with him to stop.[3] Cousins finally got up, apologized, and left the room.

J.M. put her clothes on as fast as she could and left the house. Cousins walked her out to her car and "was like don't tell, don't tell, are you okay, are you okay." J.M. didn't respond at all, because she was "agitated" and "really upset."

Once in her car, J.M. called her best friend "B." and spoke to her the whole way home. When she arrived at home, J.M. put on some pajamas and tried to go to sleep. She then called her friend "M.," and, after leaving a note for her mother to make an appointment with her doctor for the next day, J.M. went over to M.'s house, in her pajamas, to speak with M.'s mother, with whom she was very close. J.M. wanted to speak to M.'s mother because she "didn't know what to do," and she "didn't know how to handle it on her own." She didn't know how to tell her own

---

[3] We note that although J.M.'s testimony suggests she was the victim of attempted rape, sodomy, and animate object sexual penetration, the only charges brought by the Commonwealth were abduction and aggravated sexual battery, and the only offense before us to consider for legal sufficiency is aggravated sexual battery.

mother what had happened. After speaking with M.'s mom, J.M. returned home. She was able to sleep for about an hour before waking. She then called her mother and inquired about her doctor's appointment. J.M.'s mother had scheduled an appointment for 1:00 p.m.

M. went with J.M. to her doctor's appointment. Upon hearing about her ordeal, J.M.'s doctor sent M. and J.M. to the emergency room. At the emergency room, J.M. met with a SANE nurse and submitted herself to a PERK test. The SANE nurse did not find any bruises or lacerations on J.M., but she did notice that J.M. had "redness at six o'clock to the fossa navicularis, which is just down below the vaginal opening." J.M. was then interviewed by Investigator Donnie Simpson.

Cousins and Gonzin were each indicted on one count of aggravated sexual battery and abduction. The trial court tried Cousins, along with Gonzin, on March 16, 2010, nearly two years after the attack. At trial, as J.M. testified, she became emotionally upset and needed to stop her testimony in order to compose herself. Upon the conclusion of the evidence, the trial court found both Cousins and Gonzin guilty of aggravated sexual battery.[4]

Cousins and Gonzin each timely noted an appeal.

## II. Analysis

Cousins and Gonzin contend on appeal that the trial court erred in finding the evidence sufficient to convict them of aggravated sexual battery. They specifically argue the Commonwealth failed to prove J.M. suffered "serious bodily or mental injury" as a result of the attack.

When the sufficiency of the evidence is challenged on appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." Coleman v. Commonwealth, 52 Va. App. 19,

---

[4] The trial court dismissed the abduction charge against each defendant upon their respective motions to strike.

21, 660 S.E.2d 687, 688 (2008) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Id. (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). We must determine "whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt." United States v. Powell, 469 U.S. 57, 67 (1984). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original) (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original).

Cousins and Gonzin were convicted of violating Code § 18.2-67.3, which provides in pertinent part,

> A. An accused shall be guilty of aggravated sexual battery if he or she sexually abuses the complaining witness, and
>
>     \*     \*     \*     \*     \*     \*     \*
>
> 4. The act is accomplished against the will of the complaining witness by force, threat or intimidation, *and*
>
> a. The complaining witness is at least 13 but less than 15 years of age, or
>
> b. *The accused causes serious bodily or mental injury to the complaining witness*, or
>
> c. The accused uses or threatens to use a dangerous weapon.
>
> B. *Aggravated* sexual battery is a *felony* punishable by confinement in a state correctional facility for a term of not less

than one nor more than 20 years and by a fine of not more than $100,000.

(Emphasis added).[5] Notably, in requiring the Commonwealth to prove "serious bodily or mental injury" to the victim, the General Assembly clearly intended that the act of sexual battery by force, threat, or intimidation is not, in and of itself, a felony. "'The factors that elevate the criminal act from the misdemeanor to the felony are the specific age of the victim, serious bodily or mental injury, or the use or threat of use of a dangerous weapon.'" Walker v. Commonwealth, 12 Va. App. 438, 443, 404 S.E.2d 394, 396 (1991) (quoting Johnson v. Commonwealth, 5 Va. App. 529, 533, 365 S.E.2d 237, 239 (1988)). Cousins and Gonzin do not dispute the fact that they sexually abused J.M. against her will by force, threat or intimidation. They merely argue the Commonwealth "failed to prove . . . one of the essential element[s] of the offense of aggravated sexual battery, namely that of serious physical or mental injury to the victim." We agree.

In enacting Code § 18.2-67.3, the General Assembly did not define what is meant by the phrase "serious bodily or mental injury." In such cases, this Court will normally give a word its "'everyday, ordinary meaning unless the word is a word of art.'" Nolen v. Commonwealth, 53 Va. App. 593, 598, 673 S.E.2d 920, 922 (2009) (quoting Stein v. Commonwealth, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991)). The word "bodily" means "of or relating to the body." Webster's Third New International Dictionary 245 (1993). The word "mental" means "of or relating to mind." Id. at 1411. An "injury" is "an act that damages, harms or hurts: an unjust or undeserved infliction of suffering or harm." Id. at 1164. "'Bodily injury comprehends . . . *any bodily hurt*, whatsoever.'" Nolen, 53 Va. App. at 598, 673 S.E.2d at 922 (emphasis in original)

---

[5] Because J.M. was seventeen at the time of the offense, Subsection 4(a) is not implicated here; nor is there any evidence that the accused used or threatened to use a weapon. Thus, we need only consider whether the record supports the court's factual finding that J.M. suffered "serious bodily or mental injury" as a result of the attack.

(quoting Bryant v. Commonwealth, 189 Va. 310, 316, 53 S.E.2d 54, 57 (1949)). By extension, mental injury comprehends *any mental injury*, whatsoever. Clearly, J.M. sustained some degree of bodily and mental injury in this attack.

The word serious, however, "is defined as 'grave in . . . appearance' or 'requiring considerable care.'" Nolen, 53 Va. App. at 598, 673 S.E.2d at 922 (quoting Webster's Third New International Dictionary 2073 (1981)). The word "considerable" means "rather large in extent or degree," as in "a [considerable] distance," a "[considerable] number" or "he got in [considerable] trouble." Webster's, supra, at 483. Thus, in order to obtain a conviction for the felony of aggravated sexual battery, the Commonwealth was required to prove that the acts committed by Cousins and Gonzin caused any bodily or mental hurt, whatsoever, to J.M. that was "grave in . . . appearance" or that "require[d] considerable care," or that was "attended with danger." Nolen, 53 Va. App. at 598, 673 S.E.2d at 922 (quoting Webster's, supra, at 2073). It is apparent from the statutory context that the General Assembly intended that the phrases a "serious mental injury" and a "serious bodily injury" are analogous to each other.

Although it is clearly within the purview of the fact finder to decide whether or not serious bodily or mental injury has occurred to a victim of sexual battery, the fact remains the Commonwealth must present sufficient evidence upon which a fact finder could conclude such *serious* bodily or mental injury, in fact, occurred. A thorough review of the record before us does not reveal sufficient evidence from which a fact finder could reasonably conclude that Cousins' and Gonzin's actions resulted in serious bodily or mental injury to J.M.[6]

---

[6] That is not to say that a serious mental injury could never occur from a similar factual scenario; rather, the result we reach in this case is driven predominantly by the Commonwealth's failure to present sufficient evidence at trial proving any of the additional elements contained in Code § 18.2-67.3.

In fact, the Commonwealth does not argue on appeal that J.M. suffered any bodily injury from the attack, arguing solely that, "the evidence presented at trial demonstrated the victim suffered serious *mental* injury." Indeed, the SANE nurse testified that she noticed no bruises or lacerations on J.M. after the attack. The Commonwealth presented no evidence of broken bones, stitches, open wounds, scarring, bruising, or maiming. Other than some "redness" just below J.M.'s vaginal opening, there is simply no evidence of any bodily injury, much less serious bodily injury, to J.M., as a result of the attack.

However, the record is equally infirm with respect to evidence from which a fact finder could conclude that J.M. suffered a serious mental injury. The Commonwealth relies upon the following facts to support its contention that the Commonwealth proved, beyond any reasonable doubt, this particular element of the offense:

> i. As a result of the attack, J.M. was "agitated" and "really upset."
>
> ii. Upon fleeing the scene, J.M. telephoned "B." and spoke to her the entire trip home.
>
> iii. J.M. was unable to sleep right after the attack, so she went to M.'s house to speak to M. and M.'s mother about what had happened because she did not know how to handle what had happened to her.
>
> iv. J.M. was unable to speak with her own mother about what had happened.
>
> v. J.M. left her mother a note and only spoke to her when she called from the emergency room and told her mother to come to the hospital.
>
> vi. At trial, nearly two years after the attack, J.M. became emotionally upset and needed to stop her testimony to compose herself.

While these facts clearly support a conclusion that J.M. was understandably very upset by the attack, we note that *any* victim of sexual battery, even in its misdemeanor form, might necessarily exhibit such symptoms and behaviors as those presented here. Put another way, the

evidence relied upon by the Commonwealth to support a conclusion that J.M. suffered serious mental injury as a result of the attack are symptoms that would immediately and inevitably result from any sexual battery. The Commonwealth failed to establish at trial that J.M.'s mental injury was particularly "grave" or that it was attended or treated with any considerable care. Unlike a case in which serious bodily injury may be apparent by the manifestation of visible bruising, broken bones, lacerations, stab wounds or even death, a victim's mental injury may not be manifestly evident or plainly obvious to an ordinary observer. Without opining on specific factual scenarios that might give rise to the higher level of "*serious* mental injury" established by the General Assembly as a predicate to elevating a sexual battery to the felony offense of aggravated sexual battery, some examples of evidence of sufficient gravity which, if traceable to the attack, could support a fact finder's conclusion that a serious mental injury has occurred include, but are not limited to, ongoing or recurring nightmares, the existence of a phobia, severe depression or other medically recognized psychological disorder, evidence of extensive or ongoing treatment or counseling sessions, evidence of extended and unremitting feelings of fear or anxiety, resultant difficulty with physical intimacy, or evidence depicting lost self-esteem. While J.M. may have, in fact, suffered such injuries, and, indeed, the victim impact statement she presented at sentencing suggests that she did,[7] the Commonwealth failed in its obligation to present any such evidence during the guilt phase of this trial. "'It is elementary that the burden is on the Commonwealth to prove every essential element of the offense beyond a reasonable

---

[7] J.M.'s victim impact statement provides that J.M. is now "scared to be alone," and after the attack she felt "stupid . . . worthless, sick, dirty, helpless, used, betrayed, scared and confused." She feels like everyone thinks there is something wrong with her now. After the attack, J.M. went to a counselor "for a while," but then she quit going so she didn't have to talk about it every week. J.M. also couldn't concentrate on school, so she dropped out. She quit her job because Gonzin and Cousins knew where she worked. She wouldn't leave home alone and was afraid to be alone. Two weeks after the attack, J.M. moved to Kentucky to live with her brother so she could "get away from them." She no longer trusts the people she used to, and it makes her sick to see sex scenes on television.

doubt.'" Bishop v. Commonwealth, 275 Va. 9, 12, 654 S.E.2d 906, 908 (2008) (quoting Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970)).  That is, the Commonwealth must prove the elements of the offense charged *at trial* in order to obtain a criminal conviction, and the fact that sufficient evidence is presented post-trial in the course of a sentencing proceeding, while not a case of "too little" evidence, it most certainly comes "too late."

In short, because the legislature deliberately chose to include the modifier "serious" to the required showing of "bodily or mental injury," and because our obligation is to give that word its plain and ordinary meaning, we hold that in order to prove the requisite element of "serious mental injury" to sustain a felony conviction for aggravated sexual battery, the record must reflect evidence proving a greater injury to the victim's mental health by way of the frequency, degree, duration or after-effects than that which would attend any sexual battery.  Any holding to the contrary would render the lesser offense of sexual battery a nullity.

In this case, the Commonwealth failed to meet its burden of proof with respect to whether J.M. suffered a serious mental injury as a result of the attack, an essential element of the crime of aggravated sexual battery.  We, therefore, agree with Cousins and Gonzin that the evidence presented at trial was insufficient to prove they committed aggravated sexual battery.

### III.  Conclusion

Because the Commonwealth failed to present sufficient factual evidence upon which a fact finder could conclude J.M. suffered a *serious* mental injury, and because Cousins and Gonzin both agree that all of the elements of the lesser-included offense of sexual battery were proved, we reverse their convictions for aggravated sexual battery, and we remand to the trial court with direction that it enter a judgment of conviction for the misdemeanor offense of sexual

battery and re-sentence them accordingly.  See South v. Commonwealth, 272 Va. 1, 630 S.E.2d 318 (2006).

Reversed and remanded.