COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Frucci
Argued at Arlington, Virginia

**UNPUBLISHED**

JOHN LAVELLE PERRIN, JR.

v.      Record No. 1480-24-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE STEVEN C. FRUCCI
SEPTEMBER 23, 2025

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Alexandria convicted John Lavelle

Perrin, Jr., of strangulation and assault and battery. The circuit court sentenced Perrin to 5 years and

12 months of imprisonment with all but three months suspended. On appeal, Perrin contends that

the circuit court erred in denying his motion to strike a particular juror for cause and in granting the

Commonwealth's jury instruction on "bodily injury" rather than his proffered instruction. In

addition, Perrin challenges the sufficiency of the evidence to sustain his convictions, alleging that he

and the victim were engaged in mutual combat. For the following reasons, we affirm the circuit

court's judgment.

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the

sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

I. The Offense

On the morning of May 24, 2023, Damion Philson was working as a security guard at Brent Place Apartments in Alexandria. At around 9:15 a.m., Philson observed Perrin "just standing outside of" one of the apartment units on the sixth floor with no shoes or shirt on. Philson contacted the Alexandria Police Department for assistance in removing Perrin from the property. Philson and the responding officers made contact with Perrin, and Perrin "explained that he was trying to get in, but wasn't the leaseholder" and that his property was in the apartment unit. The officers advised Perrin that he had to leave because he was not permitted to loiter in the hallway, and he was escorted from the apartment building without issue.

A few hours later, through a surveillance camera, Philson saw Perrin again on the sixth floor near the elevators; he appeared to be following one of the residents. Philson then "went upstairs to inform both of them that Mr. Perrin has to either go into the resident's unit or he had to leave." When Philson arrived on the sixth floor, Perrin and the resident hopped on the elevator and the three of them went back downstairs. Once they were back in the lobby, Philson explained to Perrin that "if he was able to get the leaseholder on the phone and have the leaseholder call the property management and authorize him to gain access into the unit, then they would do that for him. But if not, he had to leave."

As Philson tried to continue explaining that "there was nothing else [they] could do" and Philson "couldn't let him in," Perrin became "more and more frustrated." Perrin then "dropped his hands," assumed "a defensive posture," and "started clapping and growling." Perrin "clenched his fists and walked toward [Philson's] personal space." As Perrin got closer, Philson used his hand and arm to distance himself from Perrin. Perrin then swung his fists at Philson, punching him "multiple times" on his shoulders and arms. During the scuffle that followed, Philson continued to tell Perrin "to stop, to leave" in order to "not escalate the situation." Philson was also "trying to get on [his] radio to call for some assistance." At some point, Perrin got behind Philson, grabbed his throat, and squeezed Philson's windpipe—hindering Philson's ability to breathe. Using both hands, Philson was able to pull himself away from Perrin. Philson then pulled out his gun and told Perrin to stop and to move back. When Perrin continued to approach and threatened to kill Philson, Philson reholstered his gun and deployed his pepper spray at Perrin's face. At that point, Perrin "decided that he wanted to leave," but, because of the pepper spray affecting his vision, Philson kept Perrin on scene until the police arrived.[1]

Because of the attack, Philson had bruising and neck pain for about a week and difficulty speaking and swallowing for about three days. Although not immediately after the attack, Philson had a medical evaluation for his injuries and was advised to take some non-prescription medication to treat his pain symptoms, which he did for five to seven days.

II. Voir Dire

During voir dire, Juror 18 indicated that as an emergency medical technician he had encountered individuals who had suffered strangulation. Juror 18 said he could set aside his prior knowledge of strangulation and consider the testimony of a medical professional on that

---

[1] The Commonwealth introduced as Exhibit 1 a video of the incident recorded by a surveillance camera in the lobby of the building.

subject. Juror 18 said that he had been "punched" four or five years before, but that experience would not affect his ability to be fair and impartial. Juror 18 also had worked as a security guard ten years before. After Juror 18 admitted that he had received training on responding to traumatic emergency issues, defense counsel asked, "[I]s it fair to say that you're not going to be able to set aside that life experience in the trial here today?" Juror 18 said yes.

At the conclusion of voir dire, Perrin moved to strike Juror 18 because he was an EMT. The Commonwealth objected and asserted that Juror 18 had "said more clearly than [another potential juror and an EMT whom the circuit court had excused] that he could set aside his experience and consider the evidence." The circuit court denied the motion to strike, observing that Juror 18 had affirmed that his experience with strangulation, as well as his experiences being punched and serving as a security guard, would not affect his ability to serve as an impartial juror. The circuit court offered Perrin the opportunity to question Juror 18 further on the matter, but Perrin declined.

III. Jury Instruction

Both parties proposed jury instructions on "bodily injury." Perrin's instruction stated that "[t]he term 'bodily injury' should be given its every day ordinary meaning." The Commonwealth's proposed instruction, Virginia Criminal Model Jury Instruction No. 37.260, stated:

> Bodily injury is an act that damages, harms, or hurts the body; is an impairment of a function of a bodily member, organ, or mental faculty; is an act of impairment of a physical condition; is an unjust or undeserved infliction of suffering or harm; or is any bodily hurt whatsoever. The victim need not experience any observable wounds, cuts, bruises, broken bones, or breaking of the skin. Bodily injury includes internal as well as external injuries to the body.

The circuit court granted the Commonwealth's proposed instruction over Perrin's objection.

The circuit court instructed the jury on self-defense principles and mutual combat.  The jury convicted Perrin of the charged offenses.  Perrin appeals.

ANALYSIS

I.  Motion to Strike Juror 18

Perrin contends that the circuit court erred in denying his motion to strike Juror 18. "[J]uror impartiality is [a question] of fact," and a circuit court's decision to seat a juror "is 'entitled to great deference on appeal' unless 'plainly wrong or unsupported by the record.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121 (2014)).  "Accordingly, the decision to retain or exclude a prospective juror will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion."  *Taylor v. Commonwealth*, 61 Va. App. 13, 23-24 (2012) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)).  "In conducting our review, we consider the juror's entire *voir dire*, not merely isolated statements."  *Ramos v. Commonwealth*, 71 Va. App. 150, 157 (2019) (quoting *DeLeon v. Commonwealth*, 38 Va. App. 409, 412-13 (2002)); *accord Thomas v. Commonwealth*, 279 Va. 131, 164 (2010) (quoting *Lovitt v. Commonwealth*, 260 Va. 497, 510 (2000)).

Unquestionably, the "right to be tried by an impartial jury" is guaranteed under both the United States and Virginia Constitutions.  *Northcraft v. Commonwealth*, 78 Va. App. 563, 587 (2023); *see* Code § 8.01-358 (outlining the process for safeguarding this right).  "For that guarantee to be effective, persons accused of violating criminal laws must be provided with 'an impartial jury drawn from a panel . . . free from exceptions.'  Every prospective juror must stand indifferent to the cause . . . ."  *Taylor*, 61 Va. App. at 22-23 (quoting *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976)).  The guarantee requires that "any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused.'"  *Northcraft*, 78 Va. App. at 587

- 5 -

(quoting *Breeden*, 217 Va. at 298). "If . . . a reasonable doubt [exists about] whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion." *Taylor*, 61 Va. App. at 23 (quoting *Breeden*, 217 Va. at 298). "These principles must be strictly applied, and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." *Id.* For a juror's opinion to "disqualif[y] him," however, it must be one of such a "fixed character [that it] repels the presumption of innocence in a criminal case" and causes the juror to believe that "the accused stands condemned already." *Northcraft*, 78 Va. App. at 589 (emphasis omitted) (quoting *Lovos-Rivas*, 58 Va. App. at 61). Ultimately, therefore, "the 'test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.'" *Ramos*, 71 Va. App. at 157 (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995)).

Because the circuit court has the opportunity to see and hear each juror respond to questions posed during voir dire, that court "is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Keepers v. Commonwealth*, 72 Va. App. 17, 42-43 (2020) (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)).

Perrin claims that Juror 18 indicated that he could not set aside his medical training and consider the evidence presented at trial about strangulation. To the contrary, however, considering the "*entire voir dire*," Juror 18 affirmed that his past experience—including medical training—would not affect his ability to serve as an impartial juror. *Ramos*, 71 Va. App. at 157 (emphasis added). In fact, the circuit court gave Perrin a chance to question Juror 18 further on the matter, but Perrin declined. We therefore discern no basis for concluding that the circuit

court abused its discretion in refusing to strike Juror 18 for cause, and we will not disturb that ruling.

II. Jury Instruction

Perrin argues that the circuit court erred in granting Instruction 9 on "bodily injury" rather than the instruction that he proffered. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). We review a circuit court's decisions in giving and denying requested jury instructions for abuse of discretion. *Id.* at 675. "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). "And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)).

The circuit court refused Perrin's instruction on bodily injury, which stated that "[t]he term 'bodily injury' should be given its every day ordinary meaning." Instead, the circuit court granted Instruction 9, Virginia Criminal Model Jury Instruction No. 37.260, which stated:

> Bodily injury is an act that damages, harms, or hurts the body; is an impairment of a function of a bodily member, organ, or mental faculty; is an act of impairment of a physical condition; is an unjust or undeserved infliction of suffering or harm; or is any bodily hurt whatsoever. The victim need not experience any observable wounds, cuts, bruises, broken bones, or breaking of the skin. Bodily injury includes internal as well as external injuries to the body.

Perrin asserts that Instruction 9 was an incorrect statement of law.

"The doctrine of judicial restraint requires that appellate courts decide cases on 'the best and narrowest grounds.'" *Davis v. Commonwealth*, 79 Va. App. 123, 146 (2023) (quoting *Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019)). To resolve this issue on the best and narrowest ground, we assume without deciding that the circuit court erred in including the phrase "unjust or undeserved infliction of suffering or harm" but conclude that any error was harmless. *See id.*

"Harmless error analysis is appropriate in the context of improper jury instructions." *Timmons v. Commonwealth*, 15 Va. App. 196, 200 (1992) (quoting *Kil v. Commonwealth*, 12 Va. App. 802, 812 (1991)). And "[i]t is 'the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless . . . .'" *Curry v. Commonwealth*, 84 Va. App. 339, 357 (2025) (second alteration in original) (quoting *Commonwealth v. White*, 293 Va. 411, 420 (2017)). "A non-constitutional error is harmless when 'it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Id.* (quoting Code § 8.01-678). "This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude, without usurping the jury's fact-finding function, 'that the error did not influence the jury[] or had but slight effect.'" *Id.* (alteration in original) (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 712 (2016)).

Our courts have defined "bodily injury" broadly "to include *any* bodily injury." *English v. Commonwealth*, 58 Va. App. 711, 718 (2011) (quoting *Campbell v. Commonwealth*, 12 Va. App. 476, 483 (1991) (en banc)). And "[b]odily injury comprehends . . . *any bodily hurt*, whatsoever." *Gonzin v. Commonwealth*, 59 Va. App. 1, 8 (2011) (second alteration in original) (quoting *Nolen v. Commonwealth*, 53 Va. App. 593, 598 (2009)). "To prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin. Nor must []he

offer proof of 'broken bones or bruises.'" *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015) (quoting *English*, 58 Va. App. at 719). Rather, bodily injury "includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition." *Wandemberg v. Commonwealth*, 70 Va. App. 124, 133 (2019) (quoting *Ricks*, 290 Va. at 479).

At trial, Philson described the injuries he suffered as bruising, trouble speaking and swallowing, and neck pain. The Commonwealth also introduced photographs that showed bruising on Philson's neck after the altercation. However, the Commonwealth did not proffer any evidence of mental harm or suffering, nor did Philson testify as to having any nightmares, anxiety, panic attacks, or bouts of depression following the incident. Accordingly, there was no evidence presented of any mental injuries that Philson sustained, but there was ample evidence of physical injuries. Therefore, the jury could have easily determined that Philson suffered "bodily injury" from the definitions in Instruction 9 without expanding the instruction to consider mental injuries as Perrin suggests.

Based upon our examination of the record and evidence presented in this case, we are satisfied that the language in the jury instruction did not affect the verdict or otherwise deprive Perrin of a fair trial on the merits. *See Timmons*, 15 Va. App. at 200 (holding that the defendant had a fair trial on the merits despite the language in the jury instruction being too broad). Accordingly, we find that the jurors would have found that Philson suffered a bodily injury absent any error. And the circuit court did not abuse its discretion in granting Instruction 9 over Perrin's proposed instruction.

III. Sufficiency of the Evidence

Challenging the sufficiency of the evidence to sustain his convictions, Perrin claims that he and Philson engaged in mutual combat. "When an appellate court reviews the sufficiency of

- 9 -

the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In conducting our analysis, we are mindful that determining witness credibility "is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The fact finder "[i]s free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc); *see Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991). When the trier of fact has resolved credibility issues in favor of the Commonwealth, "those findings will not be disturbed on appeal unless plainly wrong." *Towler*

*v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

It is axiomatic that any element of a crime "may . . . be proved by circumstantial evidence such as a person's conduct and statements." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011). The manner in which the appellate court views this type of evidence is well established. "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that [it] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512 (first alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "A conviction may rest on circumstantial evidence alone[. I]n fact, 'in some cases circumstantial evidence may be the only type of evidence [that] can possibly be produced.'" *Garrick*, 303 Va. at 183-84 (quoting *Pijor*, 294 Va. at 512).

Firmly established in our case law is the principle that the jury, not the appellate court, "determines which reasonable inferences should be drawn from the evidence[] and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017). In short, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact" for the jury, whose findings are "binding on [this Court] unless plainly wrong." *Maust v. Commonwealth*, 77 Va. App. 687, 700 (2023) (en banc) (alterations in original) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)).

"For combat to be 'mutual,' it must have been voluntarily and mutually entered into by both or all parties to the affray." *Connell v. Commonwealth*, 34 Va. App. 429, 439 (2001) (quoting *Lynn v. Commonwealth*, 27 Va. App. 336, 356 (1998)). "One who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as a mutual combat." *Id.* (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 72-73 (1993)). "Otherwise,

'every fight would be a mutual combat.'" *Smith*, 17 Va. App. at 73 (quoting *Harper v. Commonwealth*, 165 Va. 816, 820 (1936)).

Perrin was not authorized to be in the building of Brent Place Apartments on the morning of May 24, 2023. Philson had confronted Perrin earlier that day, and the police had removed him from the premises. Yet Perrin appeared in the building several hours later. As Philson explained that Perrin was not allowed to enter an apartment at that time, Perrin became frustrated and moved toward Philson in a menacing manner. When Philson tried to distance himself from Perrin, Perrin began swinging his fists and attacking Philson. During the fight, Perrin held Philson around the neck and choked him. Eventually, Philson pulled himself away, and ultimately used his pepper spray to subdue Perrin. Upon this evidence a fact finder could reasonably conclude that Philson only acted to defend himself from Perrin's physical aggression and did not enter into the altercation voluntarily. *See Lynn*, 27 Va. App. at 356 (rejecting the defendant's mutual combat argument when the "jury could have reasonably concluded" that the victim, who "started fighting with [defendant] after [defendant] struck" him, did not "enter the altercation . . .voluntarily").

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*