# COURT OF APPEALS OF VIRGINIA

---

**Record No. 0723-25-3**

---

DENNIS DEE GILBERT

v.

COMMONWEALTH OF VIRGINIA

---

Present: Judges O'Brien, Lorish and Senior Judge Humphreys
Argued at Lexington, Virginia

Opinion Issued May 5, 2026

---

**FROM THE CIRCUIT COURT OF RUSSELL COUNTY**
Michael L. Moore, Judge

B. Laken Shuler (Bruce H. Russell, II, P.C., on brief), for appellant.

Victoria Johnson, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

---

## PUBLISHED OPINION BY
## JUDGE MARY GRACE O'BRIEN

Dennis Dee Gilbert ("appellant") appeals his convictions for second-degree murder, using a firearm to commit a felony, and shooting in a public place. Appellant shot Zachary Boyd in a Walmart parking lot. Their altercation, however, began on the road—where appellant chastised Boyd for using a cellphone while driving.

Appellant asserts two assignments of error. First, he contends that the court erroneously denied his pretrial motion to exclude evidence of his encounter with another driver using her cellphone two days before the fatal shooting, claiming it was "irrelevant prior bad act evidence." Second, he challenges the sufficiency of the evidence to support his convictions, arguing that he proved self-defense as a matter of law. For the following reasons, we affirm.

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

I. The Fatal Shooting

On March 5, 2024, appellant rode his three-wheeled motorcycle to the Walmart in Lebanon. After shopping, appellant exited the parking lot and saw a green Ford Mustang pulling in; the driver was holding a cellphone up to his ear and talking. Appellant did not know the driver, Boyd, but yelled at him to get off the phone. They initially went their separate ways; appellant rode off, and Boyd drove through the parking lot to aisle 9.

Appellant soon returned to the lot, rode directly to aisle 9, and paused near the Mustang. Boyd got out of his car, and the men began arguing. Surveillance cameras from two stores captured video, but no audio, of the encounter. Witnesses recalled hearing a loud altercation, but no one heard specific words.

As depicted in the surveillance footage, Boyd turned away from appellant and walked toward his car. But he abruptly turned back and pushed appellant off his motorcycle. Boyd briefly leaned over the motorcycle and then walked around it—toward where appellant had fallen on the pavement. Boyd did not lean over again. Appellant pulled his .44 caliber handgun from his shoulder holster and fatally shot Boyd in the chest. The surveillance footage showed Boyd turning and staggering back toward his Mustang. Appellant, who was 71 years old at the time, was a military veteran and a trained shooter.

Appellant pulled himself back onto his motorcycle and steered to the side of aisle 9. As bystanders gathered to help Boyd, appellant sat and watched, appearing "angry," "agitated," and "[c]old." He announced to one bystander, "[B]itch, call 911, I killed that motherfucker." Appellant

---

[2] "An appellate court must 'review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court,' and must 'accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence' in making its determination." *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)).

told bystanders that he had either fallen or been pushed off the motorcycle, but he did not mention that Boyd had attempted to take his gun.

When interviewed by police, appellant admitted that he had seen Boyd talking on his cellphone while driving and had told him not to do so because it was illegal. Appellant explained that, after riding away from his initial encounter with Boyd, he decided to come back to the Walmart parking lot and ride around to see if any family or friends were there. He claimed that Boyd flagged him down and asked if appellant was the person who had talked to him earlier; appellant replied "yes" and reiterated that it was illegal to talk on a cellphone while driving. Their conversation grew heated, and the two men exchanged insults. Appellant told police that Boyd approached and grabbed him, ripped his shirt, broke the drink holder off his motorcycle, and either knocked or punched appellant so that he fell to the ground. Appellant claimed that, while he was lying on the ground, Boyd leaned over the motorcycle and attempted to grab the gun from appellant's holster, but appellant pushed his hand away. Appellant told police that he pulled his gun and shot Boyd when Boyd walked around the motorcycle and came toward him.

Appellant acknowledged that Boyd did not have a weapon and did not verbally threaten him but simply would not "back off." Appellant also said that Boyd could see his gun, which he openly carried in a shoulder holster, but still "got in [appellant's] face." When police asked if appellant considered leaving when Boyd initially walked away, appellant agreed that he should have left, but Boyd had called him an "asshole." Appellant also told police about an incident that occurred the day before near the same Walmart.[3] He had seen a woman talking on her cellphone while driving, and he confronted her. Appellant told police that he rode his motorcycle next to her, pointed toward

---

[3] Other evidence in the record established that this other encounter—with trial witness Courtney Mosley—actually occurred two days before appellant fatally shot Boyd.

- 3 -

his holstered gun, and made shooting gestures at her with his hand. Appellant indicated that seeing Boyd driving while using a cellphone angered him again.

Appellant told police that the lack of respect shown by those who drive while talking on a cellphone made him angry. He admitted having "road rage" and that he was still bothered by his encounter with the woman. Appellant stated that he was at his "breaking point" on the day he shot Boyd.

## II. Appellant's Self-Defense Testimony

At trial, appellant testified in support of his self-defense claim. He first explained that his lower left leg had been amputated and he used a prosthesis. Regarding the incident with Boyd, appellant testified that it began with him politely reminding Boyd not to use a cellphone while driving, but Boyd ignored him. Appellant did not "get a good look" at Boyd and paid no attention to the car he was driving. After initially riding away, appellant claimed that he only returned to the Walmart parking lot to "cruise around" and look for friends or family. He further claimed that when he rode down aisle 9, he did not notice Boyd's green Mustang. About halfway down the aisle, "someone" flagged appellant down and asked if he was "the guy that was talking to me up at the stop sign earlier." Only then did appellant recognize Boyd, and he replied, "[Y]es sir, that was me."

Appellant testified that Boyd pulled his car up, got out, and started walking in appellant's direction. Appellant turned off his motorcycle and pulled the brake, figuring that he would "give [Boyd] the courtesy of hearing what he wanted to say." According to appellant, Boyd asked why appellant had confronted him, and appellant replied that he had wanted to "remind[]" Boyd that "it's illegal to be driving with a handheld device." Boyd grew defensive, called appellant an "asshole," and started walking back toward his car.

- 4 -

Appellant responded, "[N]o sir, I'm not an asshole," and he called Boyd a "capitalistic fascist hypocrite" who lived "above the law." Boyd turned back, grabbed appellant, and "tried to jerk [him] off [his] motorcycle." According to appellant, Boyd tore appellant's shirt, ripped off a religious medallion, and broke a steel cup mounted to the motorcycle's handlebar. He punched appellant and "knock[ed] [him] off [the] motorcycle backwards." Appellant claimed that he was "knocked unconscious for a short period of time," did not "remember hitting the ground," and woke with blurred vision and a bleeding elbow.[4] Appellant testified that his right leg was stuck under the motorcycle and his "prosthetic leg was off to the side," so he "rolled over to try to get in the position . . . [to] pull [him]self up."

According to appellant, Boyd bent over the motorcycle, reached down, and tried to take his gun. Appellant, unable to get up, pushed Boyd's hand away and tried to roll out of reach. Appellant retrieved his gun from its holster and held it, concerned that Boyd would grab at it again. Appellant testified that he thought to himself, "[M]aybe, if [Boyd] sees [the gun] in my hand . . . he'd turn[] and go back to his car and leave me alone." Appellant claimed he was afraid that Boyd would take his gun and shoot him.

Appellant testified that he "had the gun pointed up in the air" and was not actually "aim[ing]" but was instead struggling to hold the gun steady due to "tremors" from "medication or . . . nerves." He "decide[d] to fire" because Boyd "wouldn't stop. . . . Even after he saw the gun in my hand and . . . saw me laying there on the ground bleeding, . . . he wouldn't stop." Appellant fired one shot because he "didn't want to kill" Boyd. He pulled himself up and asked someone to call 911.

---

[4] Surveillance footage confirms that any loss of consciousness could have only lasted seconds, as the shooting happened within one minute of appellant falling from the motorcycle.

In his testimony, appellant acknowledged that he gets "agitated when [he] see[s] someone in a vehicle with a phone up to [his or her] ear." He said that it "upsets" him when people "don't seem to respect [the] privilege" of driving.

III. Prior Incident with Courtney Mosley

During his police interview, appellant referenced a prior incident with another driver using her cellphone. That driver was Courtney Mosley, who testified at trial. The encounter had occurred two days before appellant killed Boyd, near the same Walmart. Mosley was driving with her children that day; her windows were rolled up, and she was holding a cellphone while talking on it. Appellant, who was on his motorcycle, pulled up next to Mosley and "kept looking over and making gestures." Mosley tried to ignore him, but he swerved in front of her and "slammed on his brakes." Each time she changed lanes, appellant got "right in front of [her]" and "slam[med] on his brakes, almost slowing [her] down and stopping [her]."

Mosley used her cellphone to take pictures and record appellant on his motorcycle because he was "acting really crazy and yelling and screaming." The video, which was admitted at trial, depicted appellant lifting his vest to show Mosley his holstered gun and making a shooting gesture with his hand. Appellant told Mosley, "I'll blow your fucking brains out."[5]

When Mosley moved into the turn lane toward Walmart, appellant pulled into the passing lane next to her. While the light was red, appellant "scream[ed]" and "yell[ed]" at Mosley, who called 911 because she was "so afraid." As she spoke to the dispatcher, appellant again opened his vest, displayed his gun, and made a shooting gesture—"like he[ was] going to shoot [her] in the head."

Before trial, the court denied appellant's motion *in limine* to exclude evidence concerning this incident with Mosley. The court noted that appellant himself had mentioned the encounter in

---

[5] The video contained no audio, but Mosley testified as to what appellant said to her.

his police interview "as one of the reasons why he was so upset." The court also ruled that the probative value of the evidence outweighed any undue prejudicial effect.

## IV. Jury Verdict

The court denied appellant's motion to strike at the close of all evidence, holding that his claim of self-defense presented a "classic jury question." The court instructed the jury on second-degree murder as well as both justifiable and excusable self-defense. The jury convicted appellant as charged, and the court denied his two motions to set aside the verdict.

## ANALYSIS

## I. Mosley Incident

Appellant first argues the court erred when it denied his motion *in limine* to exclude Mosley's testimony[6] regarding her confrontation with appellant two days before the shooting. He contends the evidence was "irrelevant prior bad act evidence that served no purpose, was misleading to the jury, and was overwhelmingly prejudicial."

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Cheripka v. Commonwealth*, 78 Va. App. 480, 494 (2023) (quoting *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)).

---

[6] Appellant's assignment of error challenged only the court's denial of his motion *in limine* with respect to "Mosley's *testimony* regarding [the] incident." (Emphasis added). Later in his brief, and then at oral argument, he added that the court erred in admitting video from the incident. Because this contention exceeds the scope of appellant's assignment of error, we do not address it. *See Dudley v. Est. Life Ins. Co.*, 220 Va. 343, 348 (1979) ("[T]he scope of argument on appeal is limited by the assignments of error."). "Only assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1).

"[Virginia Rule of Evidence] 2:404 governs the admissibility of prior-bad-act evidence." *Williams v. Commonwealth*, 85 Va. App. 718, 733 (2025). "[E]vidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b). Such evidence is admissible, however, "if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan." *Id.* Rule 2:404(b) permits this evidence "if the legitimate probative value of such proof outweighs its incidental prejudice." *Id.*; *see Williams*, 85 Va. App. at 734.

"Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." *Kenner*, 299 Va. at 425 (quoting *Clay v. Commonwealth*, 262 Va. 253, 257 (2001)); *see* Va. R. Evid. 2:401. Here, to obtain a conviction for second-degree murder, the Commonwealth had the burden to prove malice. *See Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016) ("Second-degree murder . . . is defined as a malicious killing."). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (footnote omitted) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Diaz v. Commonwealth*, 80 Va. App. 286, 314 (2024) (quoting *Woods*, 66 Va. App. at 131). If an accused acts with malice, he does not need a specific intent to kill, but "need only intend 'to perform the conduct' causing the victim's death." *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting Ronald J. Bacigal, *Criminal Offenses and Defenses* 340 (2011-12)).

Mosley's testimony was relevant under Rule 2:404(b) because it tended to prove that appellant acted with malice, and not self-defense, in killing Boyd. *See Harvey v. Commonwealth*, 76 Va. App. 436, 479-80 (2023) (affirming admissibility of other-crimes evidence to prove intent); *Jordan v. Commonwealth*, 84 Va. App. 446, 473-74 (2025) (affirming jury instruction allowing consideration of prior bad acts for determining malice in a murder prosecution). During his police interview, appellant referenced the Mosley incident and stated that he was still upset and bothered by it. Just as appellant's statements to police were probative of his ill will toward Boyd—who, like Mosley, had been using a cellphone while driving—so, too, was Mosley's own testimony about the incident.

Further, the evidence helped explain appellant's motive and intent, as well as his conduct and attitude, in confronting Boyd—permissible evidentiary purposes under Rule 2:404(b). *See Flowers v. Commonwealth*, 84 Va. App. 143, 155-57 (2025); *Kenner*, 299 Va. at 426-27.[7] Mosley's testimony established that appellant displayed aggression and anger toward her because of how she drove; she described how he displayed his gun, made threatening gestures, and used violent words. This evidence tended to show that appellant's conduct toward Boyd was motivated by his recent and rage-filled confrontation with Mosley and that drivers' cellphone usage infuriated him and caused him to confront and punish perceived wrongdoers. Accordingly, Mosley's testimony was relevant because it made it more likely that appellant acted with ill will or malice toward Boyd and did not act in self-defense.

Appellant claims that the "intervening factor" of Boyd attacking him rendered the Mosley incident irrelevant. At best, he argues, the Mosley incident reflected a general mindset of anger

---

[7] "Motive and intent are related but separate concepts." *Flowers*, 84 Va. App. at 155 n.3. "Motive is the inducing cause, while intent is the mental state with which the criminal act is committed . . . ." *Id.* (alteration in original) (quoting *Tibbs v. Commonwealth*, 31 Va. App. 687, 704 (2000)).

toward drivers using cellphones and had nothing to do with his specific mindset at the time he shot

his attacker, Boyd. We disagree. Boyd's actions did not negate the relevance of Mosley's

testimony. The Mosley and Boyd incidents were factually interwoven, and appellant "ha[d] no right

to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for

which he is on trial." *Kenner*, 299 Va. at 426-27 (quoting *Scott v. Commonwealth*, 228 Va. 519,

526 (1984)). It was for the jury to determine the impact of Boyd's actions on appellant's mindset at

the time of the shooting. And it was appellant who made the Mosley incident undeniably relevant

to this determination when he linked the incidents in his police interview, remarking that he had

reached his "breaking point."

"The responsibility for balancing the probative value versus the prejudicial effect rests in the

sound discretion of the trial court." *Id.* at 424; *see* Rule 2:404(b). The evidence of appellant's

confrontation with Mosley was highly probative: the incidents occurred only two days apart and in

the same general area (near the Walmart in Lebanon), and both incidents were precipitated by

individuals using cellphones while driving. Appellant himself connected the incidents, referencing

the Mosley incident during his police interview and stating that it made him angry and was still

bothering him on the day of the shooting. For these reasons, we hold that the court did not abuse its

discretion in finding that "the legitimate probative value" of the evidence "outweigh[ed] its

incidental prejudice." Va. R. Evid. 2:404(b).[8]

---

[8] At oral argument, appellant pointed out that the court granted his motion to sever a misdemeanor brandishing charge arising from the Mosley incident. He argued that, because the court found it necessary to sever the brandishing charge due to prejudice, it was an abuse of discretion and legally inconsistent to allow detailed testimony and video evidence from that incident.

We are precluded from considering this argument, however, because appellant never raised it with the trial court below, as required by Rule 5A:18, and did not address it in his appellate brief, as required by Rule 5A:20(e). *See Stokes v. Commonwealth*, 61 Va. App. 388, 397 (2013) (declining to consider an argument raised for the first time on appeal and noting Rule 5A:18's "important function" of giving "the trial court the first opportunity to rule on disputed evidentiary and procedural questions" and "allow correction of an error if possible during the

II. Self-Defense as a Matter of Law

Appellant assigns error to the court's denial of his motions to strike and set aside the verdict, arguing that because he proved self-defense as a matter of law, the evidence was insufficient to sustain his convictions. In support of his theory, appellant relies on evidence that he was a "71-year-old amputee who was attacked by [Boyd]" and lying "on the ground in fear for his life at the time he shot [Boyd]."

"A motion to strike tests the legal sufficiency of the evidence." *Hawkins v. Commonwealth*, 64 Va. App. 650, 654 (2015); *see* Rule 3A:15(a). We affirm the denial of a motion to strike where "the Commonwealth presented a prima facie case for consideration by the fact finder." *Hawkins*, 64 Va. App. at 657. Additionally, "[w]e do not disturb a trial court's judgment denying a motion to set aside a jury verdict 'unless it is plainly wrong or without evidence to support it.'" *Miles v. Commonwealth*, 78 Va. App. 73, 82 (2023) (quoting *Ferguson Enters., Inc. v. F.H. Furr Plumbing, Heating & Air Conditioning, Inc.*, 297 Va. 539, 548 (2019)); *see* Code § 8.01-680.

When reviewing challenges to the sufficiency of the evidence, "an appellate court has a 'limited' role, and '[t]he only relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (alterations in original) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)). This standard requires appellate courts to review the evidence in the light most favorable to the Commonwealth, the prevailing party below, and "accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence." *Id.* (quoting *Garrick*, 303 Va. at 182).

---

trial" (quoting *Gardner v. Commonwealth*, 3 Va. App. 418, 423 (1986))); *see also Reid v. Commonwealth*, 57 Va. App. 42, 47-48 (2010) (finding an argument waived due to significant noncompliance with Rule 5A:20(e), which requires briefing the "principles of law, the argument, and the authorities relating to each question presented").

"A defendant bears the burden of introducing evidence supporting the affirmative defense of self-defense." *Washington v. Commonwealth*, 75 Va. App. 606, 617 (2022). "To meet this burden, the defendant at trial must 'prove[] circumstances' of self-defense sufficient to 'create a reasonable doubt' of his guilt." *Id.* (alteration in original) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)).

Self-defense comes in two forms: "justifiable" and "excusable." *Id.* Justifiable self-defense is "self-defense without fault." *Id.* (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)). Excusable self-defense is "self-defense with fault." *Id.* (quoting *Bell*, 66 Va. App. at 487). The first type occurs when the accused is "without any fault on his part in provoking or bringing on the difficulty." *Id.* (emphasis omitted) (quoting *Avent v. Commonwealth*, 279 Va. 175, 199 (2010)). The second type occurs when "the accused is at 'some fault in the first instance in provoking or bringing on the difficulty' but, when attacked, he 'retreats as far as possible, announces his desire for peace,' and acts 'from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm.'" *Id.* (quoting *Bell*, 66 Va. App. at 487).

To be entitled to use "lethal force in self-defense, a defendant 'must reasonably fear death or serious bodily harm.'" *Meade v. Commonwealth*, 74 Va. App. 796, 807 (2022) (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Id.* A defendant must "show that he was in imminent danger of harm"—that is, he must show an "overt act or other circumstance that affords an immediate threat to safety." *Hines v. Commonwealth*, 292 Va. 674, 679 (2016).

"[S]elf-defense includes both subjective and objective components." *Colas v. Tyree*, 302 Va. 17, 29 (2023). A defendant "must have believed" and "must have had reasonable ground to believe" that he was in danger at the time he acted. *Perkins v. Commonwealth*, 186 Va. 867, 877 (1947).

Whether a defendant properly acted in self-defense is a question of fact. *Washington*, 75 Va. App. at 617. A court is only required to strike the Commonwealth's evidence if "undisputed facts . . . establish self-defense as a matter of law." *Taylor v. Commonwealth*, 77 Va. App. 149, 171 (2023) (quoting *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998), *aff'd*, 257 Va. 239 (1999)).

Self-defense as a matter of law is rare. *See, e.g.*, *id.* at 171-72 (declining to find self-defense as a matter of law where "each component of excusable homicide in self-defense . . . [was] in factual dispute"); *Lynn*, 27 Va. App. 354-55 (rejecting self-defense as a matter of law where jury could have reasonably concluded that appellant provoked victim or that appellant lacked reasonable belief of serious bodily harm); *Avent*, 279 Va. at 199 (finding no error that the defendant's "own statements to the police prohibit[ed] him from the benefit of self-defense as a matter of law"). A jury is free to disbelieve and reject a defendant's testimony claiming he acted in self-defense. *See Lynn*, 27 Va. App. at 354 (finding it reasonable for the jury to disbelieve appellant's testimony that the victim "held a gun to appellant's neck, grabbed appellant's wife, and fired two shots by her head").

Here, the court correctly denied appellant's motions to strike and set aside the verdict because the evidence did not establish, as a matter of law, that appellant acted in self-defense. The undisputed facts of appellant's age, amputation, and positioning on the ground did not conclusively establish that the shooting was either justifiable or excusable. *See Washington*, 75 Va. App. at 617. Instead, the record reflects significant factual disputes concerning appellant's fault in provoking the incident, the reasonableness of his purported belief that self-defense was necessary, and the proportionality of using lethal force. *See id.*; *see also Meade*, 74 Va. App. at 807. Considering the disputed facts in the record, we find no error in the court's conclusion that self-defense was a jury question.

Moreover, the jury's guilty verdict—which rejected appellant's self-defense claim—was not plainly wrong. *See Washington*, 75 Va. App. at 615. Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to prove that appellant maliciously killed Boyd. After chastising Boyd for using his cellphone while driving near Walmart, appellant initially rode away but returned to the store's parking lot and drove directly toward Boyd's Mustang. Appellant, who was armed, confronted Boyd a second time. Immediately after the shooting, appellant displayed a hot temper, hollering at a bystander, "[B]itch, call 911, I killed that motherfucker." Appellant admitted in his police interview that he had issues with road rage and was angered by poor driving habits, including cellphone use while driving. From this evidence, a jury could reasonably have concluded that appellant's anger, rather than fear of serious bodily harm, motivated appellant to shoot Boyd. The reasonableness of this conclusion is further supported by evidence from appellant's encounter with Mosley two days earlier.

Although appellant testified that he was afraid Boyd would grab his gun and shoot him, the jury was "entitled to disbelieve the self-serving testimony of the accused." *Taylor*, 77 Va. App. at 172 (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509 (1998)). Thus, to the extent appellant relied on his testimony about Boyd trying to disarm him and gain control over his firearm as the "overt act" putting him in imminent danger of serious bodily harm, the jury was entitled to disregard that testimony and find no justification for the use of lethal force. *See Meade*, 74 Va. App. at 807.[9]

Similarly, the jury was entitled to disbelieve appellant's testimony that he only returned to the Walmart parking lot to find friends or relatives, that he did not remember or recognize Boyd or his Mustang, and that they both ended up in the same parking lot aisle by coincidence. It was

---

[9] We note that in the immediate aftermath of the shooting, appellant did not tell bystanders that Boyd had tried to grab his gun.

reasonable for the jury to place little weight on appellant's testimony that he spoke politely to Boyd or parked near him to extend a "courtesy" of hearing what he had to say.

There is no dispute that Boyd pushed appellant from his motorcycle with enough force to knock him down and then walked toward the back of the motorcycle where appellant was lying on the ground. But the jury did not err in finding an insufficient basis for appellant to use deadly force, which requires a showing of reasonable fear of death or serious bodily harm. *See Meade*, 74 Va. App. at 807; *see also Foote v. Commonwealth*, 11 Va. App. 61, 69 (1990) ("[T]he amount of force used must be reasonable in relation to the harm threatened." (quoting *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989))). The jury could have reasonably concluded that, even assuming appellant had a valid self-defense claim, his use of deadly force was disproportionate to any reasonable apprehension of harm.

Although "undisputed facts" sometimes "may establish self-defense as a matter of law," *Taylor*, 77 Va. App. at 171 (quoting *Lynn*, 27 Va. App. at 353), the evidence was not undisputed here. Whether Boyd reached for appellant's gun, and whether appellant reasonably feared serious bodily harm, were disputed questions for the jury to decide. Based on our review of the record, the evidence was sufficient for the jury to find that appellant acted with malice and was therefore guilty of second-degree murder.

CONCLUSION

The court did not err in admitting the prior-bad-act evidence under Rule 2:404(b) or in denying appellant's motions to strike and set aside the verdict. Therefore, we affirm the judgment.

*Affirmed*.